[L. A. No. 6601. In Bank.—May 19, 1921.]

ARTHUR W. FRAZEE et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] WATERS AND WATER RIGHTS — RIPARIAN LANDS — PARTITION OF — PROPORTIONAL RIGHTS IN WATER.—Where a stream flows through a large tract of land owned by several persons in common, such as a Mexican grant, and a partition of the tract is made whereby each owner is assigned the right to receive water from the stream, whether his parcel abutted on the stream or not, with a right of

---

1. Nature of riparian rights, and lands to which they attach, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026.

way to make a ditch from the stream to his parcel across the intervening land, the proportional rights in the waters continued to be attached to the respective parcels of land set apart in severalty to the different owners, as riparian rights, which rights belonging to a particular parcel would pass by subsequent conveyance of the parcel.

[2] ID.—CORPORATION TO DISTRIBUTE WATER—FIXING RATES BY RAILROAD COMMISSION—CERTIORARI TO REVIEW ORDER—INSUFFICIENT PETITION—TITLE TO WATER.—Where a corporation agrees with the several owners of water rights to take water from the stream, build the necessary diverting works and distributing system, and deliver the water to the several owners, upon payment by the latter of a sum of money for a so-called "water certificate contract" to be used in building said works and system and a stated annual amount thereafter for the water so delivered, a petition by such owners to review an order of the railroad commission fixing rates to be charged by the corporation for the delivery of water to the petitioners and others is insufficient where it does not show that the water rights were separated from the title to the land.

[3] ID. — COMMON DISTRIBUTING SYSTEM — SEVERAL OWNERSHIP OF WATER—PRIVATE USE.—Where a number of persons owning land are each entitled to take water from a common stream or source, for use upon their respective tracts of land, either by virtue of an appropriation under the Civil Code, or by prescription, or as riparian owners, the water right of each is individual and several, and must be considered as private property and not the subject of public use, although the persons so owning interests in the stream are very numerous and their lands include a large neighborhood.

[4] ID.—JOINT DIVERSION—SEVERAL RIGHTS.—Such several owners may make a joint diversion in a common conduit, financed with common funds, and, in the absence of a special contract to the contrary, they will be the owners in common of the diversion works and conduit, but the respective water rights will remain several and private property. If the parties form a corporation and delegate to it the work of diversion or distribution and of constructing and keeping in repair the dams and conduits, reserving to themselves the rights in the water, they do not thereby dedicate or appropriate to public use the water thus reserved and used by them. The corporation will be merely their agent to serve their several interests, so far as they may be served by a common system of works. The water will remain the subject of individual ownership and private use as before.

[5] ID.—INSUFFICIENCY OF PETITION.—In such a case the petition is insufficient where it does not state facts showing that title to the water did not pass to the company, nor any submission by the

company or the water users to the authority of any public body
to fix rates, or anything indicating a change in the character of
the use from a private use to a public use.

PETITION to review an order of the Railroad Commission purporting to fix water rates. Submission set aside and time allowed to amend petition.

The facts are stated in the opinion of the court.

Ray W. Bruce for Petitioners.

Williams & Williams, Goudge, Robinson & Hughes and Hugh Gordon for Respondents.

SHAW, J.—This is a petition by forty-eight persons claiming to be entitled to receive water for irrigation and domestic use upon their lands from the Citizens Water Company of San Jacinto, to review an order of the Railroad Commission purporting to fix the rates to be charged by said Citizens Water Company for the delivery of the water to the respective petitioners and others.

The commission found that the Citizens Water Company of San Jacinto was engaged in the administration of a public use, being the delivery of water to the persons owning land under its canals and conduits. The petition alleges that the Citizens Water Company is not a public utility; that the water it controls has never been dedicated to public use, but is attached to and a part of the respective tracts of land owned by the petitioners and other persons who had theretofore been receiving said water. The main, if not the only, question presented is whether or not the said Citizens Water Company is a public utility and whether or not the water it controls is subject to public use. The court upon the filing of the petition, instead of issuing an alternative writ of review requiring a return to the petition, issued an order to show cause why such writ should not be issued. The defendants have filed separate demurrer to the petition upon the ground that it does not state facts sufficient to entitle the petitioners to the relief prayed for.

The petition contains the positive allegation that the Citizens Water Company is a private corporation and never has been a public utility, and that no part of the water in question has ever been dedicated to public use. If these

allegations are to be given full effect it would follow, as a
matter of law, that the Railroad Commission would have
no jurisdiction to interfere with the business of the Citizens
Water Company or with the rights of the petitioners to re-
ceive the water, or the rates to be paid therefor.   The peti-
tion, however, contains some matters of detail which appear
to us to require further explanation by averments in the
petition, and, therefore, we deem it best to state our views
on the subject, and thereupon to require the petitioners to
file an amended petition before further proceedings are had
in the case.

The petition alleges that the lands to which the Citizens
Water Company deliver the water are all included within a
Mexican grant containing some fifty thousand acres, known
as the Rancho San Jacinto Viejo; that along and into said
rancho there naturally flows a stream known as the San
Jacinto River; that in the year 1882 a partition of said
rancho was made between the owners thereof, successors
of the original grantee, in the superior court of the county
of San Diego, and by the judgment of partition in said
action the said rancho was divided into seventeen parcels,
each of which was set apart to a different party in said
action, and it was adjudged that each owner of the respec-
tive parcels should have a right of way for a ditch or
conduit across the land of any other owner lying between
him and said stream for the purpose of securing and using,
upon equal terms with the owners of allotments abutting
upon the said stream, the waters thereof for irrigation and
other uses upon the land so allotted to him, and that the
petitioners, respectively, are owners of portions of the land
so allotted in said partition and of the water rights allotted
thereto by said judgment.

[1] It follows from the facts so alleged that prior to
said partition the entire rancho San Jacinto Viejo was
riparian to the stream and that riparian rights in the stream
attached to every part thereof, and that after said partition
the proportional rights in the waters continued to be at-
tached to the respective parcels of land set apart in severalty
to the different owners.   These water rights so attached to
these several parcels of land were in their nature riparian
rights, after the partition the same as before.   Such a
partition "did not change the character of the water right

belonging to such land from a riparian right to a right appurtenant," even if the particular tract did not abut upon the stream. The right to the water still remained a riparian right and "parcel of the land itself." The result would be that a subsequent conveyance of the land would carry with it the water right belonging to the particular tract conveyed. (*Rose* v. *Mesmer,* 142 Cal. 328, [75 Pac. 905]; *Verdugo etc. Co.* v. *Verdugo,* 152 Cal. 663, [93 Pac. 1021]; *Strong* v. *Baldwin,* 154 Cal. 157, [129 Am. St. Rep. 149, 97 Pac. 178]; *Copeland* v. *Fairview etc. Co.,* 165 Cal. 161, [131 Pac. 119].) **[2]** It will be seen that the petition by these allegations shows that the respective petitioners are the owners of parcels of the land so partitioned and that by virtue of such ownership they are the owners of the water right in the said stream attached thereto by the judgment in partition, unless in some way their right to the water has been divested and the water right has been segregated and separated from the land. The petition contains nothing to show that such separation ever occurred, nor does it show that it did not occur. In order to bring about a positive issue the petition should allege facts bearing upon this point.

The petition then proceeds to allege that in 1890 a corporation under the name of San Jacinto Water Company was organized and that an agreement was made by the petitioners or their predecessors in interest whereby that corporation agreed to take water from said river, build the necessary diverting works and distributing system, and deliver the same to the petitioners or their predecessors in interest, upon payment by the said petitioners and predecessors of a sum of money for a so-called "water certificate contract" in sufficient numbers to supply the funds with which to build said works and system, and to pay thereafter a stated annual amount for the water so delivered; that this plan was carried out, the certificates were purchased and paid for as arranged, and with the money derived therefrom said corporation built the said works and distributing system, and thereafter furnished water under said arrangement to the petitioners and their predecessors in interest, until August, 1910. These certificates purported to be signed by the secretary and president of the company, and each declared that the holder thereof was entitled to receive an

amount of water equal to one-fifth of an inch to each acre of land mentioned in such certificate for seven months in the year, upon payment of three dollars per acre per year. It further declared that the interest represented by the certificate should "not become appurtenant to or pass by voluntary act or by operation of law with any land upon which the water represented may be used; transfer hereof shall only be made by surrender of this certificate to the company and reissuance of a new certificate." None of them was signed by any of the land owners. These allegations concerning the disposition and distribution of the water by said water company are uncertain as to the title to the water. It is obvious that the company could not become possessed of title to the water without a conveyance or a transfer in some manner from the land owners, since the title was vested in the latter by virtue of the partition decree aforesaid. There was apparently the not uncommon situation of a large number of land owners, each entitled to a small quantity of water from a common source, finding it necessary to devise some means by which distribution of their respective quantities of water could be made by some common system carried on at the joint expense of all the persons interested. Under these circumstances there have been various methods devised for accomplishing this result and different results upon the title to the water follow, depending upon the mode adopted for that purpose. In *Hildreth* v. *Montecito etc. Co.*, 139 Cal. 29, [72 Pac. 398], the court said: **[3]** "Where a number of persons owning land are each entitled to take water from a common stream or source, for use upon their respective tracts of land, either by virtue of an appropriation under the Civil Code or by prescription, or as riparian owners, the water right of each is individual and several, and must be considered as private property and not the subject of public use, although the persons so owning interests in the stream are very numerous and their lands include a large neighborhood. The owners of such water rights may make a joint diversion, and may carry the water from the point of diversion in a common conduit, made with common funds, and in such a case, in the absence of a special contract to the contrary, they will be the owners in common of the diversion works and conduits; but the respective water rights will

remain several and will remain private property.  [4]  If the persons owning such rights see fit to form a corporation and delegate to such corporation the work of making the diversion and distribution, and of constructing and keeping in repair the dams and conduits, reserving to themselves their rights in the water, . . . they do not thereby dedicate or appropriate to public use the water thus reserved and used by them.  The corporation becomes merely their agent for the purpose of serving their several interests, so far as they may be served by a common system of works, the water remaining the subject of individual ownership and private use as before."  Examples of this method of serving a common use through a corporate agent may be found in several of our decisions.  Descriptions of such systems are set forth in *Arroyo Ditch etc. Co. v. Bequette,* 149 Cal. 546, [87 Pac. 10], and *Walnut Irr. Dist. v. Burke,* 158 Cal. 170, [110 Pac. 518].  It has often been held that the water so distributed by such corporate means is not dedicated to public use, unless there is some express or implied declaration of such dedication emanating from the parties who own the land and the water.  (*Burr v. Maclay etc. Co.,* 160 Cal. 280, [116 Pac. 715]; *Garrison v. North Pasadena etc. Co.,* 163 Cal. 239, [124 Pac. 1009]; *Thayer v. California Dev. Co.,* 164 Cal. 130, [128 Pac. 21]; *Franscioni v. Soledad etc. Co.,* 170 Cal. 225, [149 Pac. 161].)  In *Franscioni v. Soledad etc. Co.* it was said that "a corporation owning a water supply and engaged in distributing it to persons to whose land it has agreed to deliver it for irrigation, upon a use which is private and not public or general" could "with the consent of the owners of the rights to receive such water, change the use from a private and particular use to a public use, so as to make the service and terms of delivery subject to regulation and control by public authority," and that if this was done, "all the parties concerned and consenting thereto, including the corporation engaged in the distribution, will thereafter be bound to conform to such rates, rules and regulations for the service as may be established by the public body thereunto duly authorized."  The evidence in that case showed that the change suggested in the foregoing passage had been made, so far as the parties to the action were concerned, but it was said that the judgment in the action would be

of no force with respect to other parties owning lands and receiving water from the company. [5] The petition herein is bare of allegations with respect to the title of the water company aforesaid to the water. It does not allege any conveyance or transfer by the owners to the company, nor any submission by the company or the water users to the authority of any public body to fix rates, or anything indicating a change in the character of the use from a private use to a public use. The facts alleged are not inconsistent with an arrangement between the company and the land owners that the company should take charge of the water, build works with the money furnished by the land owners and thereafter, as agent of the land owners and as trustee in charge of their property, namely, the water, distributing the water to them annually, keeping the system in repair and receiving from them the sums mentioned in the certificates aforesaid as compensation for the service. They are inconsistent with the theory that the company was administering a public use, since it does not appear that it ever acquired title to the water, and it does appear that the water belonged to the respective owners of the land. In the Franscioni case, it is to be noted, the water company was the owner of the water in controversy; that it alone disputed the fact of the dedication to public use. The petition should more fully state the facts in regard to these propositions. It does not state or purport to set forth any of the powers of the said corporation, or the dealings between it and the petitioners with respect to the water and the title thereto, if any there were.

It further appears from the petition that in August, 1910, another company was organized, namely, the Citizens Water Company of San Jacinto, the defendant herein; that thereupon said San Jacinto Valley Water Company sold, conveyed, and delivered to the Citizens Water Company of San Jacinto, defendant herein, all the property then owned by it, consisting of said water system, water, water rights, lands, rights of way, and personal property used in connection therewith, subject to all outstanding water certificate contracts theretofore issued by said San Jacinto Valley Water Company; that thereafter said defendant company purchased a large body of land, all of which was riparian to said stream and capable of being supplied with water

therefrom and from said system by extending said system and taking out more water from the stream; that this purchase was made by means of, and in the name of another corporation known as the San Jacinto Land Company, the stockholders of which were the same persons as those owning the stock of said Citizens Water Company and having the identical proportional interests in said stock; that the water company then issued to said land company sufficient water certificate contracts to cover the lands owned by the land company, and thereafter some of said lands and water certificates were sold together to the petitioners, and other parts of said land were sold to other persons, with water certificate contracts attached thereto, by said land company, and thereby enough money was realized to pay for the extensions of the system necessary to deliver the water to the additional land. The water certificate contract issued by said defendant company states that the certificate entitled the person named therein to receive water from the system upon certain described land for a fixed period of each year, upon the payment of the dues and water rates prescribed in the certificate. There is no allegation in the petition that any conveyance was made by the land owners to the defendant water company transferring the respective rights in the water pertaining to the several parcels of land to said defendant company. The certificate issued by the defendant company is set forth in full, but it is obvious that its recitals do not take the place of allegations of fact, particularly since it does not appear that the land owners, or any of them, ever signed such certificate or any other written agreement purporting to convey their respective water rights.

Thus it will be seen that the condition of the title to the water rights is left altogether undetermined by the allegations of the petition. In view of the well-known scarcity of water in this state, especially in the region of San Jacinto, it seems unlikely that the owners of land having attached thereto riparian rights in a stream, the water from which they were actually using upon the land, would consent to an extension of the distributing system to nonriparian lands, or that they would transfer such water rights to a distributing corporation otherwise than in trust for their convenient use of the water. For the foregoing reasons we consider it

necessary to an intelligent consideration of the case that the petition should be amended so as to set forth the facts, whatever they may be, from which we can determine the question whether or not the water originally belonging to the land has ever become devoted to public use.

It appears from the petition that the defendant water company in 1914, without the consent or acquiescence of any of the petitioners, applied to the Railroad Commission for an order fixing its rates for the service of the water which it had under its control; that such order had been made, and that thereafter it endeavored to charge the rates so fixed. All of the petitioners except three, namely, C. E. Borst, E. E. Easley, and L. B. Johnson, appeared before the commission upon said application and apparently were parties to the proceeding. The three persons named, however, were not parties thereto. The question whether this order of the commission is an adjudication to the effect that the Citizens Water Company is a public utility; that the water it controls is dedicated to public use, and that all persons receiving water from it were the recipients of water devoted to a public use and not owners of private rights which were not subject to the jurisdiction of the commission, will be an important question in this case, but in the present condition of the petition we do not believe it advisable that we should enter upon the consideration thereof.

It is ordered that the submission be set aside and that the petitioners have leave to amend their petition, if they are so advised. Sixty days are allowed for that purpose.

Olney, J., Wilbur, J., Lennon, J., Angellotti, C. J., Sloane, J., and Lawlor, J., concurred.