[Civ. No. 20641. Second Dist., Div. Three. Sept. 30, 1955.]

CITY OF GLENDALE, Appellant, v. CRESCENTA MU-
TUAL WATER COMPANY (a Corporation), Respondent.

Henry McClernan, City Attorney (Glendale), John H. Lauten, Assistant City Attorney, Walter W. Charamza, Deputy City Attorney; O'Melveny & Myers, Sidney H. Wall, Bennett W. Priest and R. Bruce Hoffe, for Appellant.

Dryer, Burris & Lagerlof, Harvey F. Rawlings and Richard I. Padgham for Respondent.

ASHBURN, J. pro tem.*—Plaintiff city of Glendale appeals from a judgment denying it recovery of an amount alleged to be due from defendant Crescenta Mutual Water Company as an excise tax upon the use of water distributed within city territory. The judgment rests primarily upon a holding that the application of the city ordinance to defendant and its shareholders works an unlawful discrimination and denial of constitutional rights.

Defendant is a mutual water company engaged in distributing water both within and outside of the city of Glendale. It has about 1,500 users within the city and 1,700 outside the city limits. The territory which it serves inside the city was brought in by annexation on January 28, 1952. The ordinance in question, number 2559, was passed on June 19, 1952, imposing an excise tax of five cents per 100 cubic feet of water upon the use in the city of water purchased from any water distributing agency for use therein. Section 24 provides that all monies collected thereunder shall be paid into the Metropolitan Water District Fund of the city and be used by it in the payment of the tax of the Metropolitan

*Assigned by Chairman of Judicial Council.

Water District of Southern California which would otherwise be levied upon the real property in the city. The real objective of the ordinance was to require water users in the annexed territory to carry their proportionate share of the burden of the Metropolitan Water District tax. An examination of the merits of the claim of discrimination and other objections to the tax requires a somewhat detailed statement. The case was submitted upon an agreed ''Substitute Stipulation'' of facts.

The said Metropolitan Water District of Southern California was organized under the Metropolitan Water District Act (Deering's Gen. Laws, Act 9129), now found in 1 Water Code (1954), page 1108 et seq. City of Glendale, a charter city, has been a member of the district since December 29, 1928. Said Act 9129 empowers and requires the district to levy annual ad valorem taxes upon all lands within its limits (§ 8(b)) ; the amount to be derived from the territory within each member city is fixed separately (§ 8(c)) ; and each city after making declaration of intention so to do and performing certain other antecedent acts, ''may elect to pay out of the municipal funds of such city all, or the stated percentage, as the case may be, of the amount of tax which would otherwise be levied upon property within such city'' (§ 8(d)), and thereupon the ad valorem tax is not levied or collected (§ 8.1). Section 8(h) also provides in part: ''Cities, the areas of which, in whole or in part, are included within metropolitan water districts incorporated hereunder, are hereby authorized to pay to such district, out of funds derived from the sale of water or other funds not appropriated to some other use, such amounts as may be determined upon by the governing bodies, or other bodies, boards, commissions or officers having control of such funds, thereof, respectively. Such payments may be made in avoidance of taxes as herein provided, or otherwise, and shall not be deemed gratuitous or in the nature of gifts, but shall be deemed payments for water or services in connection with the distribution of water. Any city making any such payment to any district incorporated hereunder, whether in avoidance of taxes or otherwise, shall receive credit therefor and the amount of the payment so made by any city shall be deducted from the amount of taxes which would otherwise be levied against property lying therein as herein provided.'' For all fiscal years since 1929-1930, including that of 1951-1952, the district has levied taxes and the city has made payments pursuant to said statutory pro-

visions in lieu and in avoidance of ad valorem property taxes. This has to be done pursuant to specific election each year and plaintiff on November 29, 1951, made its declaration of intention to that effect for the fiscal year 1952-1953.

So far as pertinent the internal fiscal management of the city is as follows. Its public service department operates the city-owned waterworks and electric works. Receipts therefrom in excess of requirements for operating expenses, depreciation and bond service charges, go into a waterworks revenue fund and an electric works revenue fund respectively. And any amounts in excess of the requirements of those funds are transferred to a public service surplus fund (Charter, Art. XI, §§ 20, 21, 22). Disbursements from this fund may be made only on special appropriation by the city council, "for waterworks or electric works purposes only, which shall include payment of all or any portion of the tax of the Metropolitan Water District of Southern California, or its successors in interest, which the Council may elect to pay out of the funds of the City of Glendale." (§ 22.) To facilitate such payments to the district the city created a fund known first as Metropolitan Water District Aqueduct Fund, later changed to Metropolitan Water District Fund, for which appropriations are made periodically and from which the "in lieu" payments have been made to the district over the years. That fund also includes excise tax moneys collected under said ordinance 2559. Net revenues of the city waterworks which went into the public service surplus fund exceeded the amount withdrawn from it for the purpose of paying the district tax for the year 1952-1953 and prior fiscal years. Obviously the water rates were enough to carry that tax as well as all expenses of the waterworks.

Prior to January 28, 1952, none of the area served by defendant was within the city and hence it was not concerned with the district tax or any payments in lieu of same. When part of that area was annexed the city had already made its declaration of intention "to make payment from that part of the Public Service Surplus Fund of the City known as the Metropolitan Water District Fund in lieu of and in avoidance of taxes which otherwise would be levied upon taxable property in the City for the fiscal year 1952-1953" (quoting stipulation of facts). The district tax that year "was based in part upon the assessed value of taxable property in said annexed area," being enlarged accordingly. Neither defendant nor its shareholders purchased water from the city—not then or now. And

the city was obligated to pay to the district an amount equal to the entire ad valorem computation. It would receive no part of that money from defendant or its shareholders unless some means were devised to compel them to pay their just share of the "in lieu" moneys. Hence the enactment of the excise tax ordinance 2559 on June 19, 1952. Counsel for the city frankly say that "the purpose of the Ordinance is to derive from water users in the annexed area additional revenues sufficient to pay the increase in the MWD[1] tax resulting from their inclusion within the City boundaries." And: "Its effect was to impose upon water users in the annexed territory (who did not purchase water from the City), a water use tax which would produce approximately the amount required to cover the increase in the MWD payment resulting from the annexation."

The ordinance, in section 6, imposes the excise of five cents per 100 cubic feet of water upon use of water purchased from any water distributing agency for use within the city.[2] The incidence of the tax is upon the use of water purchased for that purpose and every user is declared liable for the same. (§ 7.) The distributing agency is required to collect the tax and turn it over to the city. Section 11 provides: "Any water distributing agency which fails to collect from its customers the tax hereby levied shall be deemed to have elected to pay the tax hereby levied on behalf of such customers and the said agency shall be liable to the City for the amount of the tax which would otherwise have been collected from such customers." The city of Glendale is specifically included in the definition of distributing agency and thus declared to be obligated to collect the use tax from its customers. But the rates then and now in effect are high enough to supply the necessary funds for the in lieu or avoidance payment. And section 10 provides certain exemptions from the tax, as follows:

"There shall be excluded from the tax:

"(a) Purchases of water made by the United States of America, the State of California or any political subdivision of either thereof when such purchases are made for the use of such public agency.

"(b) Purchases of water made for the purpose of resale.

"(c) Purchases made from a water distributing agency

---

[1] Counsel's abbreviation of Metropolitan Water District.

[2] For present purposes it is assumed that defendant is a water distributing agency within the ordinance definition and that its furnishing water to a shareholder constitutes a sale and purchase.

which elects to pay the tax levied by this ordinance from funds of such agency.

"(d) Purchases made from a water distributing agency which has purchased such water from the City under Ordinance No. 1940 when the tax has been incorporated in the City's water rate."

Subsection (c) covers the city's own domestic users and (d) covers sales by the city to distributing agencies who have paid the tax to the city before resale to the user. (This flows from subsection (d) of ordinance 2592.) While the city's own customers are not assessed the five-cent excise separately, they pay water rates which include an equivalent amount;[3] thus they continue to carry the same burden as previously. But the ordinance, by its terms, imposes the tax only upon users who are not customers of the city—persons such as Crescenta and its shareholders. Any moneys collected from them as such tax go into the Metropolitan Water District Fund and are used as part of the in lieu payment. (§ 24.) If the excise is not paid the in lieu installments must be met, pursuant to the city's declared election, out of funds accumulated from water rates previously paid by the city's customers. And, unless the ordinance lawfully imposes that tax upon them, Crescenta's shareholders, who would be liable for the ad valorem tax if the city had not elected to make avoidance payments, are relieved of that property tax and bear no share of the substitute payments.

The trial court concluded that: "1. Imposition of an excise tax upon use of water distributed by one agency and no such excise tax upon identical use of water distributed by another agency is unlawful discrimination. . . .

"2. Imposition of a definite economic burden upon water distributed by one agency without imposition of such burden upon water distributed by other agencies is unlawful discrimination."

Counsel for respondent argue that this is true because the increased Metropolitan tax "was caused not by an additional use of water within its boundaries, but rather by an increase in assessable property within its boundaries" and that

---

[3] For each quarter of the year 1952-1953 a water use tax return was prepared by the city's public service division and filed with the city clerk under ordinance 2559; a warrant drawn on the city treasurer was transmitted with each return and the amount thereof was charged to the public service surplus fund and credited to the Metropolitan Water District Fund.

the "increase in the amount of money payable by the City to the MWD . . . bears no relationship to either the quantity of water they [Mutual shareholders] use or to the source from which they purchase such water." Factually the statements are correct,[4] but whether that constitutes an unlawful classification or discrimination is a far different question. As elsewhere phrased the argument is that defendant's shareholders are taxed as water users rather than property owners and that this has no reasonable relation to the object of the tax. But section 24 of the ordinance shows plainly that the object is to raise money for use in making the avoidance payment which relieves those shareholders of a property tax. If the city were to elect to pay only a percentage of its share of the tax in cash, the balance would be spread over all the property within its limits; the Metropolitan Act No. 9129 does not contemplate or provide any machinery for limiting the ad valorem assessment to the annexed territory (see § 8 (f) and § 9). The property owners within the annexed area are entitled to share in water furnished by the Metropolitan Water District upon payment of proper charges for same. And they should pay their proportionate share of maintaining the district whose water supply is at hand in case of need at any time. (Indeed, respondent's brief indicates that "shortage or threatened shortage of water" was the genesis of the ultimate annexation.) It would seem difficult to devise a more equitable method of apportioning the common burden than the excise ordinance in question. The only substitute plan that occurs to us would be that of reducing the charges to city customers to the extent of five cents per hundred gallons, assessing that amount separately as an excise tax and collecting it at the same time as the water charge. The result would be exactly the same as the present procedure. ■ The law does not require idle acts. ■ And it looks through form to substance.

■ Appellant's counsel succinctly describe the classification involved in this case, as follows: "The annexation brought into existence a new classification of water users. They are those who obtain their water from respondent and other

---

[4]However, the stipulation of facts says: "Five cents multiplied by the number of hundred cubic feet of water used in the City of Glendale in the fiscal year 1952-1953 would have produced an amount approximately equal to but not greater than the payment to the Metropolitan Water District of Southern California in lieu of and in avoidance of the tax which would have been levied by said District on taxable property in the City of Glendale for that year."

private water distributors rather than from the City and who are located in the newly annexed area which serves to increase the Metropolitan Water District tax payable by the City of Glendale.'' But it is not incumbent upon the taxing authority or the court to demonstrate the soundness of the classification reflected in the taxing law. He who challenges it must overthrow a presumption of validity which will sustain the classification ''if it can be reconciled on any reasonable and natural theory.'' (*Roth Drug, Inc.* v. *Johnson,* 13 Cal. App.2d 720, 734 [57 P.2d 1022].) The same case says at page 733: ''The Supreme Court of the United States has definitely held that the Fourteenth Amendment of the federal Constitution, which guarantees to all citizens equal protection to personal privileges and property rights, does not forbid reasonable discriminations in matters involving taxation.''

The governing principles are enunciated in *Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136 [222 P.2d 879]. The city's license tax on places of amusement was there challenged. The discussion starts with this concession at page 139: ''Plainly there is discrimination in the taxes imposed by ordinance No. 754 for it does not apply to all businesses operated in the city. That premise also embraces the fact that plaintiffs bear a greater burden of the taxes than other businesses.'' The ground of attack upon the ordinance is shown at page 141: ''Plaintiffs assert that the classification is improper because it does not include all amusement businesses in the city and that they bear a major share of the taxes assessed against amusements. It will be remembered that exemptions are made of pool halls and arcades where admissions are not charged, certain religious, charitable, and educational affairs, where music alone is furnished without admission charge.'' Concerning which the court said at page 142: '' '. . . If a classification of persons or occupations made for the purpose of imposing taxes is founded on natural, intrinsic or fundamental distinctions which are reasonable in their relation to the object of the legislation and otherwise, they will be deemed to be valid and binding. (5 Cal.Jur., p. 824, § 188) . . . While the classification should be reasonable, natural and just, in the absence of a showing to the contrary, it will be assumed there are good grounds for the classification, and the act will be upheld. (6 R.C.L. p. 378, §§ 369-376.) In the case of *People* v. *Monterey Fish Products Co.,* 195 Cal. 548, 556 [234 P. 398, 401, 38 A.L.R. 1186], it is said in that regard: ''When a legislative enactment is

attacked upon this ground—of an unauthorized classification —all presumptions and intendments are in favor of the reasonableness and fairness of the legislative action (5 Cal.Jur., § 628 et seq., and cases cited), and the decision to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary. . . .'' ' ''

''No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary.''

*Carmichael* v. *Southern Coal & Coke Co.*, 301 U.S. 495, 509 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327]: ''It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation. [Citing cases.]'' Respondent has failed to show that there is any arbitrary or unreasonable classification in the Glendale excise tax ordinance.

█ The attack upon it from the standpoint of exemptions must also fail. ''Whether the tax statute may make a valid exemption presents the same problem as that of classification; if the exempted persons or businesses may be included in a distinct class then the equal protection of the laws is not denied to those taxed. (33 Am.Jur. 363.)'' (*Fox etc. Corp.* v. *City of Bakersfield, supra*, 36 Cal.2d 136, 144.) ''Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.'' (*Carmichael* v. *Southern Coal & Coke Co., supra*, 301 U.S. 495, 509.)

A twofold claim is made to the effect that the city's own water users have not in fact borne the burden of the in lieu payments. First it is asserted that the use of the various funds above described is but bookkeeping and manipulation.

█ However, a ''division of the moneys belonging to the

municipality into separate funds for administrative purposes is within the discretion of the legislative body of the city." (*Newton* v. *Brodie,* 107 Cal.App. 512, 520 [290 P. 1058].) And in the Glendale instance the funds in question are commanded by the charter (art. XI, §§ 20-22) except the Metropolitan Water District Fund which was established by resolution of the city council in 1929; its existence is impliedly recognized by section 22 of article XI, above quoted, *re* appropriations for payment of the Metropolitan tax. This case does not deal with mere bookkeeping entries and the stipulation of facts establishes that in fact this burden has been borne by the city's water users.

Next it is said that the in lieu payment is a municipal obligation which falls ultimately upon all taxpayers and that defendant's shareholders thus bear their portion of same because general funds belonging partially to them are used for the purpose. This is answered by the fact, previously discussed, that the special fund arising from water charges has borne the burden. ■ Also by the further consideration that citizens or taxpayers do not own any part of city funds or other properties. Their rights are limited to preventing misapplication of same. Their interest in municipal property "is that of citizens and taxpayers, not that of proprietors" (38 Am.Jur. § 707, p. 411; *Farmers & M. Sav. Bank* v. *Minnesota,* 232 U.S. 516, 524 [34 S.Ct. 354, 58 L.Ed. 706]).

■ The claim that the tax is imposed for an unlawful purpose—the making of a gift of public funds—cannot prevail. The Metropolitan Act expressly provides in section 8(h) that such avoidance payments "shall not be deemed gratuitous or in the nature of gifts, but shall be deemed payments for water or services in connection with the distribution of water." And section 22, article XI, of the charter specifically provides that water revenue funds may be used in payment of the Metropolitan tax. Regardless of the legislative declaration that such a payment by a city does not constitute a gift it remains a fact that it is not a gratuity. The payment is supported by ample consideration, availability of plentiful water for use of the city's inhabitants—a vital municipal objective in Southern California. For that standby service the city or its inhabitants must pay whether they use the water or not (a separate charge is made for water; Act 9129, §§ 5(10) and 5½). And it is immaterial whether the city raises the funds through an excise tax or a sales tax or

an ad valorem assessment (which would be levied directly by the Metropolitan District). The payment must be made to the district. In no sense is it a gift.

Denial of due process and equal protection of law is said to inhere in the requirement that defendant, a mutual water company, collect the tax from its shareholders or pay the same itself. ■ That one in defendant's situation may be made the government's tax collector *nolens volens,* under penalty of personal liability for failure to act, is now well established. (*Pierce Oil Corp.* v. *Hopkins,* 264 U.S. 137, 139 [44 S.Ct. 251, 68 L.Ed. 593]; *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U.S. 62 [59 S.Ct. 376, 83 L.Ed. 488]; *Abney* v. *Campbell,* (5 Cir.) 206 F.2d 836, 841; 346 U.S. 924 [74 S.Ct. 311, 98 L.Ed. 417].) ■ A charter city has all the power of the sovereign state in this matter of exacting taxes for revenue, except as it is limited by constitution or charter. (*Ainsworth* v. *Bryant,* 34 Cal.2d 465, 569 [211 P.2d 564].)

■ The argument that defendant is obligated to deliver water to its shareholders at cost, that this tax is not a part of its cost, and therefore it impairs the existing contract with its shareholders comes rather late as a constitutional problem. The contrary has been settled for many years. See *National Ice etc. Co.* v. *Pacific Fruit Express Co.,* 11 Cal.2d 283, 293-294 [79 P.2d 380]; 16 C.J.S. § 283, p. 708. Moreover, the tax if paid by defendant, becomes one of the costs of distribution (see *Saulsbury Oil Co.* v. *Phillips Petroleum Co.,* (10 Cir.) 142 F.2d 27, 39).

■ The fact stipulation says: "The water produced by the defendant is delivered to its shareholder-users through a system of underground pipes to meters at the property line of the shareholder-users and thereafter flows through pipes on the land of the shareholder-users. The water is used by them on said land for household uses and for irrigation of lawns, trees and shrubbery and for commercial uses." The argument that the shareholder may not be the user but merely the landlord of a tenant-user deserves little discussion. The water is delivered and metered at the property line, that is the basis of billing by the company, and it is the logical point for billing and collecting the tax. Once the validity of the exaction is established it follows inevitably that the company can refuse delivery unless it is paid (*cf. Fuller* v. *Azusa Irrigating Co.,* 138 Cal. 204, 215-216 [71 P. 98]; *Curtin* v. *Arroyo Ditch etc. Co.,* 147 Cal. 337, 341-342 [81 P. 982]),

and respondent's cited cases[5] do not hold the contrary. The question of whether landlord or tenant should ultimately bear the tax is one for adjustment between them, before or after the event. The various practical difficulties confronting a mutual company suggested by respondent shrink into insignificance in face of the fact that two other mutual water companies which distribute water within the city collected and paid this use tax for each quarter of the fiscal year 1952-1953 under the provisions of said ordinance 2559.

Respondent further argues that the excise tax is invalid because of violation of certain provisions of the charter of the city of Glendale.

Sections 20 and 22 of article XI are said to have been transgressed. The argument is that any payments which the city elects to make in avoidance of the Metropolitan property tax must be disbursed from its public service surplus fund and only from that fund; that payment from the Metropolitan Water District Fund does not fall within the permissible category. The court found that said section 22 "requires that such portion of the tax of The Metropolitan Water District of Southern California as The Council shall elect to pay from the funds of the City of Glendale shall be paid by special appropriation from such Public Service Surplus Fund and only from such Fund." The words "and only from such Fund" are not in said section. The pertinent portion of section 22 is as follows: " 'Except as otherwise provided in this Section, disbursements from said Public Service Surplus Fund may be made by The Council by special appropriation for waterworks or electric works purposes only, which shall include payment of all or any portion of the tax of The Metropolitan Water District of Southern California, or its successors in interest, which The Council may elect to pay out of the funds of the City of Glendale.' " The portion beginning with the word "which" was added by amendment in 1941. The effect of same is to specifically include Metropolitan tax payments within the phrase "for waterworks or electric purposes only" and thus to say that that tax is one of the disbursements for which appropriation may be made from said public service surplus fund. It has been the uniform practice to make such appropriations and to pay the money through the medium of the Metropolitan Water Dis-

[5]*Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.*, 111 Cal.App. 688 [296 P. 933]; *Miller* v. *Imperial Water Co. No. 8*, 156 Cal. 27 [103 P. 227 24 L.R.A.N.S. 372].

trict Fund. It is only the intervention of that subsidiary fund which gives rise to respondent's contention. The fact remains that the in lieu payment is made from water funds, which go into and out of the public service surplus fund and then through the Metropolitan fund to the Metropolitan District in satisfaction of the obligation. Moreover, section 22 does not require Metropolitan payments to be made out of the surplus fund; it merely authorizes payments to be made from that fund in the discretion of the council for certain limited purposes, one of which is the Metropolitan avoidance payment. The same practice has been pursued by the city since 1929 (both before and after the 1941 amendment) and that constitutes an administrative construction of the charter which is entitled to great weight (see *Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1]). The claim of violation of sections 20 and 22 of article XI is without merit.

Other specifications of alleged charter violations relate to matters concerning which the trial judge found against defendant. ▮▮▮ Ordinarily a respondent cannot assert error. (4 Cal.Jur.2d § 552, p. 413.) Unless it may do so in this instance, the judgment must be reversed with directions. But that should not be done without consideration of other claims made in support of the alleged correctness of the judgment. In other words this is one of those occasions in which a respondent may be heard to allege error in aid of affirmance. (*Mott* v. *Horstmann,* 36 Cal.2d 388, 393 [224 P.2d 11]; *Southall* v. *Security Title Ins. etc. Co.,* 112 Cal.App.2d 321, 323 [246 P.2d 74].)

▮▮▮ Respondent asserts a violation of section 12, article XI of the charter, claiming this is a special tax which is invalid for failure to submit to the electors. That section must be construed in the light of related provisions. Section 11 says: · "The total tax rate for any one year shall not exceed one per cent of the assessed valuation, unless a special tax be authorized, as provided in this chapter; . . ." And section 12: "Whenever the Council shall determine that the public interest demands an expenditure for municipal purposes, which cannot be provided for out of the ordinary revenue of the City, it may submit to the qualified voters at a regular or special election, a proposition to provide for such expenditure, either by levying a special tax, or by issuing bonds, but no such special tax shall be levied nor any such bonds issued, unless authorized by the affirmative votes of

two-thirds of the electors voting at such election.'' The pertinent rule of construction appears in *People* v. *Moroney,* 24 Cal.2d 638, 642 [150 P.2d 888]: '' '. . . a statute must be read and considered as a whole, in order that the true legislative intention may be determined. All the parts of a statute must be construed together, and harmonized, so far as it is possible to do so without doing violence to the language or to the spirit and purpose of the act, so that the statute may stand in its entirety. For the purpose of harmonizing apparently conflicting clauses, each should be read with direct reference to every other which relates to the same subject, and so read, if possible, as to avoid repugnancy.' '' Sections 9, 10 and 11 are so worded as to refer exclusively to ad valorem property taxes. Section 11 says in effect that the basic rate of one per cent of assessed valuation may be increased to the extent of a special tax voted by the people. This could mean only a property tax. Section 12 implements the phrase of 11, ''unless a special tax be authorized, as provided in this charter; . . .'' It does so by submitting to the voters at a general or special election a proposal to provide for an expenditure which ordinary revenues cannot meet—to provide for same ''either by levying a special tax, or by issuing bonds''; same must be approved by two-thirds vote. Section 22 of the same article authorizes payment, at the election of the council, of all or any part of the Metropolitan tax out of the public service surplus fund. This was done by amendment in 1941, later than the passage or amendment of section 11 or section 12. It would be unduly straining the meaning of section 12 to hold that it requires a special election to raise funds for any part of the Metropolitan tax which is not to be paid out of the surplus fund. Section 12 relates only to property taxes. The trial judge did not err in so holding.

Next it is said that if ordinance 2559 does not exact a special tax it contravenes section 14 of article XI. It creates a general budget fund and provides that all ''receipts from the general tax levy, licenses, fines, permits, . . . and all other receipts except those from the Public Service Department,'' and except ''those which are collected for a specific purpose'' shall be credited to and disbursed from the general budget fund. The ordinance specifies that the excise tax shall be deposited and paid into the Metropolitan Water District Fund. Hence the alleged violation of the charter. Counsel for respondent argue that if this is not a special tax then it is not collected for a special purpose. It is further said that

the phrase "for a specific purpose" applies only to one designated by the charter, to the exclusion of any other. We find no basis for this in the context or any other provision of the charter. The trial judge correctly rejected this contention.

Lastly it is argued that Ordinance No. 2559 does not apply to respondent or its shareholders, because it is a mutual water company and the terms "customers," "purchased" and "sold" can have no application to the defendant's producing and distributing water at cost to its shareholders whose shares of stock are appurtenant to the land from which the water is produced. First, as to the terms of the ordinance. The heart of it is found in section 6: "An excise tax at the rate of five (5) cents per one hundred cubic feet of water is hereby imposed on the use of water in the City of Glendale purchased from any water distributing agency for use therein." And the incidence is use of water distributed and used within the city. "Every person using in this City water purchased from a water distributing agency is liable for the tax." (§ 7.) It is water "purchased" from "any water distributing agency" for use therein. (§ 6.) And "Water Distributing Agency" means "any person . . . which distributes water through a system of water pipes to persons who are the ultimate customers for such water." (§ 5.) The trial judge found that the water distributed by defendant is its own property and is sold to its shareholders within the meaning of the term "sold" as used in the ordinance; that shareholder-users are purchasers and customers and defendant a water distributing agency within the ordinance. There is no question but that defendant answers the description of "person" in section 2; the claim is that, because of its mutual character, defendant's shareholder who receives and uses the water takes what already belongs to him, makes no purchase and is not a customer. Section 8 requires every distributing agency "at the time of collecting charges for water sold to such customers" to collect the tax from the customer. Anent this the company says there is no sale and hence no customer.

The word customer does not imply a buyer, though it may do so. "CUSTOMER. A person with whom a business house, or a business man, has regular or repeated dealings" (17 C.J. p. 443). But the words sale and purchase ordinarily, though not necessarily, imply rendition of a consideration, a price (see *People* v. *Cockrill*, 62 Cal.App. 22, 33 [216 P. 78]; *Anderson* v. *Badger*, 84 Cal.App.2d 736, 744

[191 P.2d 768]). ▮▮▮ While the general rule is that a taxing statute must be construed strictly in favor of the taxpayer (*Wong Him* v. *City & County of San Francisco,* 87 Cal.App.2d 80, 87 [196 P.2d 135]; *Estate of Potter,* 188 Cal. 55, 64 [204 P. 826]; 24 Cal.Jur. § 11, p. 27), "it must also be remembered that such a rule does not take precedence over other fundamental rules of statutory construction. It is fundamental that 'judicial construction should be in keeping with the natural and probable legislative purpose, and avoid conflict, and harmonize all the applicable provisions of the law on the subject if possible.' (McQuillin, Municipal Corporations, 3d ed., vol. 16, Taxation, § 44.12.) Also where the problem involves the construction of a particular section of a taxing ordinance, the ordinance should be looked to in its entirety and its provisions construed together." (*City of Los Angeles* v. *Belridge Oil Co.,* 42 Cal.2d 823, 827 [271 P.2d 5].) Counsel for both sides have argued this case upon the assumption and assertion that the dominant purpose of the excise ordinance was to compel water users in the annexed area to bear their proportionate share of the Metropolitan tax avoidance payment, and, so far as the record shows, the annexed territory included no water users other than defendant's shareholders. ▮▮▮ So defendant and its users were the prime objective of the ordinance.

Respondent's counsel assert that the water belongs to the shareholders, that they pay nothing for it when delivered, that the only charge paid is for production and distribution, and hence there is no purchase or sale. Reliance is placed upon *Stratton* v. *Railroad Com.,* 186 Cal. 119 [198 P. 1051]; *Frazee* v. *Railroad Com.,* 185 Cal. 690 [201 P. 921]; *Hildreth* v. *Montecito Creek Co.,* 139 Cal. 22 [72 P. 395]. ▮▮▮ Those decisions hold that in the case of shareholders who own and pool water rights their mutual water company becomes merely their agent in producing and delivering to them their own water. But that is not true of water which is owned by the mutual company and delivered by it to its shareholders even though their stock is appurtenant to their respective lands. (See *Consolidated People's Ditch Co.* v. *Foothill Ditch Co.,* 205 Cal. 54, 63-64 [269 P. 915].) The trial court found that no shareholder had ever transferred any water rights to defendant and that "water produced by defendant and delivered to its shareholder-users in the City of Glendale is the property of defendant; is not the property of any of its

shareholder-users, and is sold by defendant to its shareholder-users within the meaning of the term 'sold' as used in Ordinance No. 2559." And the stipulation says: "The land owned by the defendant is occupied by its wells, reservoirs and pumping plants." It does not appear that any of the shareholders own any water rights or that they ever had any which they could have conveyed to the company. The statute under which defendant was organized recognizes in section 330.24, Civil Code, that it may own water which it may sell to its shareholders; it may provide in its article or bylaws "that water shall be *sold,* distributed, supplied or delivered only to owners of its shares." (Emphasis added.) Defendant's amended articles of incorporation provide that it shall deliver water to none except its stockholders and to them only at cost, and immediately add: "For said purpose or in aid thereof, said corporation shall have power to acquire, develop, maintain and operate a permanent water supply"—e.g., Colorado River water. Also that its rates and charges collected from its stockholders shall be so fixed as "to preserve the private ownership of the *water rights of this corporation* and the delivery of *its* water as a mutual water company." (Emphasis added.) In a certificate of amendment of its articles in 1925, enlarging the territory served by defendant, appears a resolution of the board of directors which contains a recital concerning "the supply of water *belonging* and available *to this corporation* . . . sufficient for the *present and future reasonable needs* of the enlarged district." (Emphasis added.) This signifies ownership of a supply of water applicable to lands outside of existing boundaries as well as those included therein, and rights owned by existing shareholders obviously could not be exercised for any such outside use. All of the evidence supports the finding that defendant is the owner of the water furnished to its shareholders; hence their payment of the cost of production and delivery is the rendition of consideration for the acquisition of property belonging to another—a purchase and sale. It follows that there was no error in the holding that the defendant and its shareholders are subject to the excise levied by ordinance 2559. So much for the fiscal year 1952-1953. Because of the amendments made to 2559 .by ordinance 2686 there is no problem as to the liability for the tax in later fiscal years.[6]

---

[6]Ordinance 2559 was amended on April 29, 1954, by Ordinance No. 2686, which changed the definitions so as to clearly include a mutual water company whether owner or mere distributor of water. " 'Purchase.'

Defendant's answer "admits that it delivered 94,846.14 hundred cubic feet of water to its shareholders located in the same area as its principal office of business as alleged in paragraph 1 above, and that the defendant did not collect the tax allegedly levied by said purported Ordinance No. 2559." Also that it filed a return showing the tax for the period from July 1, 1952, to September 30, 1952, to be $4,-742.31, the amount alleged in the complaint. Section 19 of the ordinance prescribes a penalty of 10 per cent plus interest at one-half of one per cent per month for failure of any water distributing agency to make the required collection and payment of the tax. The city prays for the penalty in addition to the $4,742.31. No question is raised as to liability for the penalty if obligation to pay the principal amount is established.

The judgment is reversed with instructions to make and enter judgment as prayed.

Wood, acting P. J., and Vallée, J., concurred.

A petition for a rehearing was denied October 26, 1955, and respondent's petition for a hearing by the Supreme Court was denied November 23, 1955. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.

---

Purchase shall include buying, obtaining or receiving water when a rate, charge, price, or fee is paid either for the water or the pumping or delivery thereof.

" 'Sold.' Sold shall include, but not be limited to, the pumping and delivering of water to customers for which any rate, charge, price, or fee is exacted or received.

" 'Customer.' Customer shall include any consumer of water and shall specifically include a shareholder of a mutual water company obtaining or receiving water from such company."