## SCHOFIELD *v.* DINGMAN.

1. ADVERSE POSSESSION—WATERS AND WATERCOURSES—EVIDENCE—
SUFFICIENCY.

   In suit by lot purchasers to have their rights to beach property
   lying between their lots and waters of Lake Michigan · ad-
   judged, evidence *held,* insufficient to establish title by adverse
   possession.

2. DEEDS—RIPARIAN RIGHTS—WATERS AND WATERCOURSES.

   Purchasers of lots separated from beach and waters of Lake
   Michigan by intervening lots, who were granted "riparian
   rights" in their deeds, may be given no greater right than that
   of access to beach and enjoyment thereof for purposes of
   recreation.

3. SAME—EASEMENTS—DIRECT ACCESS TO WATER.

   Deeds to purchasers of specified quantities of land ending at
   bluff, short of meander line, conveying "riparian rights" in
   beach property lying between their lands and waters of Lake
   Michigan, *held,* to have vested only permanent easement, suit-
   able to enjoyment of direct access to lake and use of methods
   and means adapted to such end.

Appeal from Berrien; White (Charles E.), J.
Submitted November 22, 1932. (Docket No. 226,
Calendar No. 36,702.) Decided March 1, 1933.

Bill by Hugo Schofield and others against Wil-
liam L. Dingman and others for reformation of
deeds and for quieting title to land. From decree
granting plaintiffs certain rights, some plaintiffs
and all defendants appeal. Affirmed.

*Stratton & Evans,* for plaintiffs.

*Will R. Stevens* and *Gore & Harvey,* for defend-
ants.

WIEST, J. Thomas P. Turner owned land border-
ing Lake Michigan in Berrien county, and had a
surveyor prepare a plat of a part thereof, designat-

ing lots by numbers, together with dimensions.
This plat was not recorded. Along the lake was
quite a uniform bluff about 50 feet above the water
and at times, especially when there was high water,
the water washed the foot of the bluff, but most of
the time there was a sand beach between the bluff
and the water. The plat was laid out on top of the
bluff upward of 167 feet from the meander line,
with seven lots fronting a private roadway 125 feet
from the rear of the lots at the edge of the bluff,
and with lots on the other side of the roadway, and,
therefore, some distance from the edge of the bluff.
Turner planned to sell lots to persons for summer
resort purposes, and, to induce purchases, repre-
sented that "riparian rights" went with the lots,
and, in some instances, so stated in conveyances.
Mr. Turner died, and defendants Dingman acquired
his rights to the land between the bluff and the
water, and claimed exclusive right to possession and
control thereof. Thereupon plaintiffs, owners of
lots, and Mrs. Wallace, owner of a tract by metes
and bounds, but also stating, "to the bank of Lake
Michigan," filed the bill herein to have their rights
to the beach adjudged, claiming title thereto by ad-
verse possession and under grant of riparian rights
and representations that riparian rights were ap-
purtenant to their lots. The circuit judge found no
title by adverse possession, decreed the private
ways, inclusive of one to the lake, permanent for
use in common by lot owners, imposed a permanent
easement of right of enjoyment of beach uses upon
the land below the bluff, and granted special ease-
ment rights to owners of lots abutting the bluff.
Some of the plaintiffs and all of the defendants ap-
pealed.

We find no title established by adverse possession.
Stairways down the bluff, bathhouses and boat

shelters were of too temporary a nature to indicate adverse possession, and the time of their erection too uncertain to furnish controlling evidence. Some fixtures, more permanent in nature and of recent installation, were ordered removed. "Riparian rights," accorded lot owners separated from the beach by intervening lots, can be given no greater meaning than right of access to the beach and enjoyment thereof for the purposes of recreation. This the decree granted, and was what Mr. Turner clearly intended by the misnomer "riparian rights." The owners of lots abutting the edge of the bluff were accorded some additional rights by the decree, short, however, of title to land not conveyed to them. Other deeds were of specific quantities of land ending at the bluff, and the term "riparian rights" in such conveyances of land, short of reaching the meander line, must be held to have vested only a permanent easement, suitable to enjoyment of direct access to the lake and use of methods and means adapted to such end. The decree gave an "easement appurtenant" to plaintiffs Wallace, Schofield, Lynch, and Davidson, owners of lots abutting the bluff:

"To use any of said side hill (bluff) and beach between said lines (lot lines extended to the meander line) as a means of ingress and egress to and from the beach, shore and waters of Lake Michigan, and to make every other use thereof lawfully incident and belonging to an owner of property having 'riparian rights' but not including any commercial or business purpose, but including, among others, the right to swim, fish, bathe, wade, play in and go boating on said waters and to rest, sunbathe, play and picnic on said lands between said lines, all to the extent customarily done with summer resort property on Lake Michigan in that general neigh-

borhood, all without interference directly or indirectly by said defendants or their agents.

"To enjoy air, light and vision across said intervening lands to Lake Michigan.

"To have said lands free from all buildings or obstructions placed thereon in front of the separate properties of said plaintiffs, * * *.

"To construct, maintain, repair, reconstruct, and use a stairway down said sidehill at any point opposite his or her separate lot or parcel of land.

"To construct, maintain and use a bathhouse. * * *

"To construct, maintain and use a pipe line across and/or under the said lands * * * from the waters of Lake Michigan to the separate parcels of lands."

The lot owners, granted such easement, are not satisfied and want the exclusive rights of riparian proprietors. This, if granted, would exclude the owners of lots back from the bluff from enjoyment of such portions of the beach. Defendants are opposed to the easement. If no such easement is granted, then there is no meaning given to the term "riparian rights" in deeds and by representations of Mr. Turner, and all purchasers will be excluded from access to the lake. All parties trace title to Mr. Turner; plaintiffs by direct deeds or *mesne* conveyances, and defendants as heirs or through heirs of Mr. Turner. Plaintiffs are in position to ask all that Mr. Turner intended by terms in deeds and representations to grant, with lots he sold, and defendants are in no position to urge less.

Consideration of the evidence leads to the opinion that the circuit judge reached the right result. The decree in the circuit is affirmed, with costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.