RUGGLES *v.* DANDISON.

1. WATERS AND WATERCOURSES—LAKE FRONTAGE—ARTIFICIAL CHANNELS—PASTURED BOGGY LAND—NATURAL CONDITION.

Riparian rights to a lake may not be acquired by nearby land owners by digging an artificial channel from their land through a bog to the lake nor may such rights be acquired solely because of fact that the soft marsh muck has been trampled down by cattle pastured there over many years and water from the lake at times flows around such boggy places, since that would not be the natural condition of the land.

2. ADVERSE POSSESSION—HOSTILITY.

Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession no matter how long maintained as hostility is of the very essence of adverse possession.

3. SAME—ELEMENTS.

Adverse possession must have been for the whole period prescribed by statute, actual, open, visible, notorious, continuous and hostile.

4. FENCES—RIPARIAN RIGHTS—NATURAL SHORE LINE—PERMISSIVE USE.

Bill to enjoin maintenance of fence on line dividing plaintiffs' property from that of defendants because it interfered with alleged riparian rights in lake located on defendants' land *held,* properly dismissed where plaintiffs failed to prove their land formed any of the natural regular shore line of the lake and evidence showed that such use as plaintiffs had enjoyed of the lake was a permissive one.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 13, 1938. (Docket No. 41, Calendar No. 39,804.) Decided June 6, 1938.

Bill by May C. Ruggles and others against Washington Dandison and others for an injunction, determination of riparian rights and other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Harold E. Howlett,* for plaintiffs.

*Pelton & McGee,* for defendants.

McALLISTER, J.   Plaintiffs and defendants are adjoining owners of land in Oakland county.   On the property of defendants there is situated a small lake approximately 15 or 20 acres in area.   On the line dividing the property, defendants have erected a wire fence.   Plaintiffs filed a bill to enjoin defendants from maintaining the fence on the ground that plaintiffs have riparian rights in the lake; and on the further ground that they have acquired rights to the use of the said lake by prescription.   The trial court dismissed plaintiffs' bill of complaint, finding that they were not riparian owners and had secured no rights by prescription.

The testimony is conflicting.   Plaintiffs claim that the lake borders upon their property and that at various times the waters of the lake inundate their land.   One of the plaintiffs testified that at high water the surface of the lake extends approximately 35 feet over plaintiffs' property. The engineer employed by plaintiffs to do field work and prepare blue prints for use at the trial, testified that on March 30, 1937, the waters of the lake extended to a point four feet north of the fence on plaintiffs' property with a depth of 3 inches and width of 35 feet, but that the lake boundary was not regular at this point.   Plaintiffs' tenant testified that during the summer season no portion of the lake was within 30 feet from plaintiffs' property, and that between the

lake and the fence the land was miry and boggy. Kenneth Wells, a witness for defendant, testified that in 1910 he had seen two members of the Ruggles family making a channel from their property into the lake so that they could pull a boat up to solid land. This channel was located at a point on the lake where a so-called dock exists at the present time and is that part of the lake where the water at high time presents an unbroken surface on plaintiffs' land. At other places on plaintiffs' property there is "just water around the bogs."

In October, 1936, those who built the fence walked over plaintiffs' property along the dividing line and no place did the water come above the rubbers on their shoes; in April, 1937, when an attempt was made to measure the greatest depth of water in any part of the bog land along the fence, the men who measured the depth merely laid some rails over the marshy land and were able to walk along the dividing line without getting their feet wet. At this time, the greatest depth of the water in any part of the bog along the fence was three inches; between the fence and the lake there was marsh muck, with grass and weeds growing thereon.

Counsel have ably discussed the questions involved, with numerous citation of cases. But there is a dearth of authority on questions involving riparian rights in small inland lakes, and the rules are vaguely general as to the natural boundaries of such lakes. Analogies are rather remote in the cases cited, and they are not of much assistance, as, for the most part, they involve questions of title to land, tide waters, meander lines, and the high and low water marks of navigable rivers.

Whether this lake can be said to extend to plaintiffs' property is a question of fact. If the water of the lake touches plaintiffs' property, because of an

artificial channel which was dug by plaintiffs from their property, through the bog land to the lake, they can acquire no riparian rights by virtue of this fact; and if water from the lake at times flows around boggy places on plaintiffs' marsh land, because of the fact that such soft marsh muck has been trampled down by cattle pastured there during many years, in the past, plaintiffs can claim no riparian rights, because of this situation, as this would not be the natural condition of the boggy land adjacent to the lake. There was evidence to present such questions to the lower court for determination.

The trial judge made an inspection of the property at a season which, in his opinion, would in all probability appear most favorable to plaintiffs' claim, and found that plaintiffs' property was without water frontage; that it did not border on the natural boundary of the lake; that plaintiffs' property was low and marshy and on extreme occasions water extended across the fence line over a small passageway that had been made as a result of use. This is apparently at the same location, where it was testified that the channel was made. The trial court also found:

"There is, however, no uniformity of shore line of the lake extending to any point on the made way in proximity to the Ruggles' land, the distance of the natural shore line being several feet remote and if ever the shore line extended to the Ruggles' land it was at a time prior to that any man now living could testify."

On the question of prescriptive right, there was no evidence that plaintiffs had ever asserted any use or possession to the lake adverse to that of defendants, or of such a nature as would indicate they claimed it as a matter of right.

In *King* v. *Battle Creek Box Co.*, 235 Mich. 24, 35, the Court said:

"Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is of the very essence of adverse possession. 1 R. C. L. pp. 701–705.

" 'All of the authorities agree that the adverse possession must have been for the whole period prescribed by the statute, actual, open, visible, notorious, continuous and hostile.' *Bean* v. *Bean*, 163 Mich. 379, 396.

"The use for a way of passage of uninclosed vacant land not in use by the owner, or even mere possession of it, is not in itself hostile to the owner. The presumption would be that such occupancy was in subordination to the legal title. To obtain title by prescription all the essential elements of adverse possession for the whole statutory period must be so clearly shown as to make plain to the owner that his rights are being invaded in a hostile manner."

Defendant Dandison had passively allowed access to the lake to the members of plaintiffs' family and to others in the neighborhood. When plaintiffs attempted to lease boats, defendant Dandison challenged their right to do so by erecting signs and thereafter plaintiffs made no assertion of such a right. Their tenant afterward requested permission of defendant Dandison to use a boat on the lake. Plaintiffs failed to establish any prescriptive right to the use of the lake.

On our review of the entire record, the decree of the trial chancellor is affirmed, with costs to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.