THOMPSON v. ENZ.

DECISION OF THE COURT.

1. WATERS AND WATER COURSES—RIPARIAN RIGHTS—INLAND LAKES—
REMAND.

Action for declaration of rights of riparian proprietors, in which
defendant riparian proprietors propose to subdivide riparian
lands into parcels, most of which would not abut on natural
lakeshore, but would abut on artificial channel dug from
lake to back of lands, is remanded to trial court for the
taking of evidence as to the reasonableness of use proposed,
and make a factual determination, per BLACK, T. M. KAV-
ANAGH, SOURIS, and ADAMS, JJ.; for affirmance of judgment
of the trial court granting judgment for plaintiff, per DETH-
MERS, C. J., and KELLY, J.; with O'HARA and BRENNAN, JJ.,
dissenting on ground that a riparian owner may alter natural
shoreline of an inland lake provided he does not adversely
affect rights of other riparian owners to the use and enjoy-

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters §§ 271, 372.
[2, 3, 15] 56 Am Jur, Waters § 273.
[4, 33] 56 Am Jur, Waters § 274.
[5] 56 Am Jur, Waters § 277.
[6] 56 Am Jur, Waters § 283.
[7] 56 Am Jur, Waters §§ 273, 277, 283.
[8, 9] 56 Am Jur, Waters § 285.
[10] 56 Am Jur, Waters §§ 277, 285.
[11] 56 Am Jur, Waters § 287.
[12] 56 Am Jur, Waters §§ 274, 275.
[13] 56 Am Jur, Waters §§ 274, 287, 288.
[14] 56 Am Jur, Waters §§ 256–260, 274.
[16, 17] 56 Am Jur, Waters §§ 274, 342.
[18–20] 56 Am Jur, Waters §§ 274, 285, 346, 347.
[21] 56 Am Jur, Waters §§ 274, 285, 290, 341, 346.
[22] 56 Am Jur, Waters §§ 274, 285.

ment of the lake, the effect of such alteration generally being a question of fact, but no question of fact was presented herein where parties entered into a stipulation of facts and both parties moved for summary judgment.

SEPARATE OPINION.

BLACK, T. M. KAVANAGH, SOURIS, AND ADAMS, JJ.

2. WATERS AND WATER COURSES—RIPARIAN LAND.

*Riparian land is a parcel of land which includes a part of a natural water course, or which is bounded by a natural water course.*

3. SAME—RIPARIAN LANDS—RIPARIAN PROPRIETOR.

*A riparian proprietor is a person who is in possession of riparian lands or who owns an estate in riparian lands.*

4. SAME—RIPARIAN OWNERS—RIPARIAN RIGHTS—RIGHT OF ENJOYMENT.

*Riparian owners have a right to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means.*

5. SAME—RIPARIAN RIGHTS—RIPARIAN LANDS.

*Riparian rights are appurtenant only to lands which touch on a water course or through which it flows and which are used as a whole for a common purpose, not to any lands physically separated from the stream and the land bordering on it, although belonging to the same owner.*

6. SAME—RIPARIAN RIGHTS—RIPARIAN PROPRIETOR.

*Riparian rights can be claimed only by a riparian proprietor.*

---

REFERENCES FOR POINTS IN HEADNOTES

[23, 24] 5 Am Jur 2d, Appeal and Error § 974; 56 Am Jur, Waters §§ 271, 272.
[25, 26] 56 Am Jur 2d, Amicus Curiae § 3.
[27] 56 Am Jur, Waters §§ 270, 271, 290.
[28, 29] 56 Am Jur, Waters §§ 273–275, 285.
[30] 56 Am Jur, Waters §§ 252, 256.
[31, 38] 56 Am Jur, Waters §§ 61, 276.
[32] 56 Am Jur, Waters § 467.
[34] 56 Am Jur, Waters § 276.
[35, 37] 56 Am Jur, Waters § 290.
[36] 56 Am Jur, Waters §§ 276, 285.

7. SAME—RIPARIAN RIGHTS—NONRIPARIAN OWNERS.

*"Riparian rights" accorded lot owner separated from a beach by intervening lots mean nothing more than right of access to the beach and enjoyment of the beach for purposes of recreation.*

8. SAME—ARTIFICIAL WATER COURSE—RIPARIAN RIGHTS.

*Land abutting on an artificial water course has no riparian rights.*

9. SAME—ARTIFICIAL WATER COURSES—RIGHTS OF ADJOINING OWNERS.

*The right of those owning land bordering upon or through which artificial channels pass to the use of the water flowing therein is not a natural right nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription.*

10. SAME—SUBDIVIDED RIPARIAN LANDS—RIGHTS OF BACKLOTS.

*Parcels of land, subdivided from that part of riparian lands not bordering on a lake, and abutting on an artificial canal dug by the subdivider, have no riparian rights because (1) they neither include a part nor are they bounded by the lake, and (2) the canal itself is an artificial water course giving rise to no riparian rights.*

11. SAME—RIPARIAN RIGHTS—NONRIPARIAN PROPRIETOR—TRANSFER.

*An attempted transfer of riparian rights from a riparian proprietor to a nonriparian proprietor is invalid.*

12. SAME—RIPARIAN RIGHTS—BASIS.

*Riparian rights are common to all riparian owners on the same body of water, and rest entirely upon the fact of title in the fee to the shore land.*

13. SAME—RIPARIAN RIGHTS—TRANSFER OR ALIENATION.

*Riparian rights are not alienable, severable, divisible, or assignable apart from the land which includes, or is bounded by, a natural water course.*

14. SAME—NONRIPARIAN OWNERS—EASEMENTS.

*Nonriparian owners may not acquire riparian rights by conveyance or reservation, but may acquire easements, licenses, or the like for a right-of-way for access to a water course.*

15. SAME—RIPARIAN RIGHTS—RIPARIAN USES.

*Riparian uses are divided generally into 2 classes, a use for natural purposes, and a use for artificial purposes.*

16. SAME—RIPARIAN USES—NATURAL PURPOSES.

*Riparian uses for natural purposes encompass all those uses absolutely necessary for the existence of the riparian proprietor and his family, without which both man and beast would perish, such as the quenching of thirst and use for household purposes.*

17. SAME—RIPARIAN USES—NATURAL PURPOSES—PREFERRED POSITION.

*Riparian uses for natural purposes enjoy a preferred nonproratable position with respect to all other uses rather than a correlative one.*

18. SAME—RIPARIAN USES—ARTIFICIAL USES.

*Artificial riparian uses are those which merely increase one's comfort and prosperity and do not rank as essential to his existence, such as uses for commercial profit and for recreation.*

19. SAME—RIPARIAN USES—ARTIFICIAL PURPOSES—CORRELATIVE POSITION.

*Riparian uses for artificial purposes occupy a correlative status with respect to uses by other riparians for their artificial purposes.*

20. SAME—RIPARIAN USES—ARTIFICIAL USES—RESTRICTIONS.

*Riparian use for an artificial purpose must be only for the benefit of the riparian land and must be reasonable in light of the correlative rights of other riparian proprietors.*

21. SAME—RIPARIAN USE—ARTIFICIAL USE—REASONABLE USE—INJURY.

*An injury caused to other riparian owners in the use of their riparian rights for artificial purposes that is incidental to a reasonable enjoyment of riparian use for artificial purposes by a riparian proprietor can demand no redress.*

22. SAME—RIPARIAN RIGHTS—ARTIFICIAL USES—REASONABLENESS.

*Matters to be considered in determining whether an artificial use of riparian rights is reasonable include (1) what the use*

is for, (2) its extent, duration, necessity, and its application, (3) the nature and size of the stream, and the several uses to which it is put, (4) the extent of the injury to the one proprietor, and of the benefit to the other, (5) and all other facts which may bear upon the reasonableness of the use.

23. APPEAL AND ERROR—FINDING OF FACT—INSUFFICIENCY—REMAND.
Action for declaration of rights of riparian proprietors, in which defendant riparian proprietors propose to subdivide riparian lands into parcels, most of which would not abut on natural lakeshore, but would abut on artificial channel dug from lake to back of lands, is remanded to the trial court for the taking of evidence as to the reasonableness of use proposed, in case where the trial court made no finding of fact as to the reasonableness of the use, and the record is insufficient for the Supreme Court to make a determination as to reasonableness.

SEPARATE OPINION.

DETHMERS, C. J., and KELLY, J.

24. APPEAL AND ERROR—REMAND—PLEADING—SUMMARY JUDGMENT.
Remanding of case to trial court for finding of fact as to reasonableness of use of lakefront property should not be done in case where Court of Appeals found that the question of reasonableness was not before the court because not framed by the pleadings, both parties to the action moved for summary judgment, and the parties have agreed that no factual question is in issue.

DISSENTING OPINION.

O'HARA and BRENNAN, JJ.

25. AMICUS CURIAE—ISSUES.
Amicus curiae *must accept the issues framed by the actual parties to a lawsuit.*

26. SAME—RIPARIAN RIGHTS—LAKE LEVEL—ISSUES.
The attorney general of the State of Michigan, as amicus curiae in a lawsuit between private property owners over riparian rights on a lake, must accept the issues framed by the parties to the suit, and cannot allege in his brief that the development of a lake proposed by the defendants in the lawsuit would have an adverse effect on the level of water in the lake, where the parties did not frame an issue on this question.

27. Appeal and Error—Basis of Decision—Issues.

*Decision in action for declaratory judgment of rights of riparian owners on lake must be predicated upon the assumption that the development of riparian property proposed by defendants would not lower the level of the water in the lake nor have any other specific deleterious effect on the lake, when the issues framed by the parties to the lawsuit do not include any issue as to lowering of the level of the water or other deleterious effect.*

28. Waters and Water Courses—Riparian Rights.

*Lands must abut upon the water to have riparian rights, and lands which do not have riparian rights cannot accede to them by reason of the creation of an artificial canal.*

29. Same—Riparian Rights—Subdivision Lots.

*Subdivision lots which are not contiguous to the water and which are conveyed with no reference in the conveyance to riparian rights have no riparian character and cannot thereafter be made riparian by the digging of a canal.*

30. Same—Access to Water—Nonriparian Owner—Easement.

*A riparian owner may grant an easement over his land to permit a nonriparian owner to have access to the water.*

31. Same—Riparian Rights—Natural Shoreline—Alteration.

*Alteration of the natural shoreline does not in itself adversely affect the riparian rights of other owners of lakefront property.*

32. Same—Riparian Rights—Natural Shoreline—Improvements.

*Improvements built on the natural shoreline of the body of water, such as seawalls, boat wells, and permanent docks, do not infringe upon the riparian rights of other owners in the absence of specific harm flowing therefrom.*

33. Same—Riparian Rights.

*Generally, riparian rights comprise such uses of waters as do not deprive other riparian owners of the same uses.*

34. Same—Riparian Rights—Infringement—Dredging of Canal.

*Whether the dredging of a particular canal by a riparian owner constitutes an infringement upon the riparian rights of other riparian owners is a question of fact.*

35. SAME—RIPARIAN RIGHTS—INFRINGEMENT—DREDGING OF CANAL.

*Plaintiff riparian owners, attempting to prevent the dredging of a canal connected to the body of water on which they own land, have the burden of alleging and proving some actual damage to themselves that will flow from the dredging of the canal.*

36. SAME—RIPARIAN RIGHTS—INFRINGEMENT—INCREASED USE.

*Increased use of a lake resulting from the dredging of a canal to provide direct access from lots not contiguous to the lake, and the deleterious effects flowing naturally from such increased use, do not, standing alone, constitute an unreasonable infringement upon the riparian rights of other riparian owners.*

37. SAME—RIPARIAN RIGHTS—USE BY PLEASURE CRAFT.

*The problem of clogging of inland lakes of Michigan with pleasure craft in the future cannot be solved by a court-declared rule of law that vests in lakefront property owners the right to limit the number of persons who can enjoy **the** use of inland lakes.*

38. SAME—RIPARIAN RIGHTS—ALTERATION OF SHORELINE.

*Riparian owner held, to have the right to alter the natural shoreline of an inland lake, provided that in doing so he does not adversely affect the rights of other riparian owners to the use and enjoyment of the lake, whether the alteration will have such adverse effect in any particular case being **a** question of fact.*

Appeal from Court of Appeals, Division 3; Burns, P. J., Holbrook and T. G. Kavanagh, JJ., reversing Barry, McDonald (Archie D.), J. Submitted February 8, 1967. (Calendar No. 6, Docket No. 51,479.) Decided December 4, 1967.

2 Mich App 404, reversed.

Complaint by Lewis B. Thompson and others against Edward R. Enz, Robert E. Boyle, and Sunrise Shores, Inc., a Michigan corporation, for declaratory judgment of rights in lands bordering on

a lake. Summary judgment for plaintiffs. Judgment reversed by Court of Appeals. Plaintiffs appeal. Reversed.

*Law, Fallon, Weathers, Richardson & Dutcher,* for plaintiffs.

*Richard M. Brewer,* for defendants.

*Amicus curiae: Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Nicholas V. Olds* and *Jerome Maslowski,* Assistant Attorneys General.

T. M. KAVANAGH, J. Plaintiffs filed a complaint in the Barry county circuit court against defendants claiming violation of their rights as riparian owners on Gun lake and seeking a declaratory judgment to that effect. Both parties moved for summary judgment. Plaintiffs were granted the relief requested.

Defendants appealed to the Court of Appeals, which reversed the judgment of the trial court and directed that summary judgment be entered for defendants.[1]

Leave to appeal to this Court was granted.

This case concerns certain property rights in and around Gun lake, which is situated partly in Barry county and partly in Allegan county. The parties agree that this lake has approximately 2,680 acres of surface area and approximately 30 miles of shoreline.

The defendant corporation is a contract purchaser of a riparian parcel of land having approximately 1,415 feet of frontage on said lake, and the individual

---

[1] Reported, 2 Mich App 404—REPORTER.

defendants are the sole stockholders of the corporation.

Plaintiffs are riparian owners of other property abutting Gun lake.

The State of Michigan sought and was granted permission in the trial court to file a brief *amicus curiae.* The State is a riparian owner of a large parcel of land abutting the lake.

Defendants are in the process of developing and subdividing their parcel of land into from 144 to 153 lots. Of these lots, approximately 16 will abut on the natural shoreline of the lake. The remainder of the lots will front on canals. To give the back lot purchasers access to the lake the defendants' plan calls for excavating across riparian lots Nos. 13 and 76. (See attached plat.)

All Lots Front on the
Channel or the Lake.

The defendants purport to grant to the purchasers of those lots fronting on the canals riparian rights to the lake and rights of access through the excavation to the lake. The back lots would have frontage on the canals of approximately 11,000 feet.

The following questions are raised on appeal:

1. May a right of access to Gun lake be created by dredging an artificial canal from the lake through lots having frontage on Gun lake to back lots having no frontage thereon, and may ownership of such lots carry with it riparian rights?

2. Does the development by defendants of their property which partially fronts on Gun lake by the construction of a canal connecting back lots to the lake and granting rights of access to the lake constitute an illegal invasion of the rights of the plaintiffs and an infringement of their riparian rights in and to the surface of Gun lake and in and to the subaqueous land thereunder?

"Riparian land" is defined as a parcel of land which includes therein a part of or is bounded by a natural water course. 4 Restatement, Torts, § 843, p 326. See, also, *Palmer* v. *Dodd,* 64 Mich 474, 476; *Stark* v. *Miller,* 113 Mich 465; *Monroe Carp Pond Co.* v. *River Raisin Paper Co.,* 240 Mich 279, 287.

A "riparian proprietor" is a person who is in possession of riparian lands or who owns an estate therein. 4 Restatement, Torts, § 844, p 331.

"The riparian owners have a right to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means." *Koopman* v. *Blodgett,* 70 Mich 610, 616; *Kennedy* v. *Niles Water Supply Co.,* 173 Mich 474.

As it was stated in *Harvey Realty Co.* v. *Borough of Wallingford,* 111 Conn 352, 358 (150 A 60, 63):

"A riparian proprietor is an owner of land bounded by a water course or lake or through which

a stream flows, and riparian rights can be claimed only by such an owner. *They are appurtenant only to lands which touch on the water course* or through which it flows and which are used as a whole for a common purpose, *not to any lands physically separated from the stream* and the land bordering on it, although belonging to the same owner." . (Emphasis supplied.)

In the case of *Schofield* v. *Dingman,* 261 Mich 611, the Court was considering a situation similar to the case at bar. One Turner owned land bordering on Lake Michigan and had prepared a plat of a part of it. There was a bluff about 50 feet above the water at this point along the lake and at times the water washed the foot of the bluff. Most of the time, however, there was a sand beach between the bluff and the water. The plat was laid out along the top of the bluff. Turner planned to sell those lots for resort purposes and to promote sales attempted to convey riparian rights with the lots. Turner died, and the defendants acquired his rights to the land between the bluff and the water and claimed exclusive right to possession and control thereof. Of the granting of the riparian rights to the back lot purchasers, the Court said (p 613):

" 'Riparian rights,' accorded lot owners separated from the beach by intervening lots, can be given no greater meaning than right of access to the beach and enjoyment thereof for the purposes of recreation."

In the case of *Hilt* v. *Weber,* 252 Mich 198, the Court said (p 218):

"It is a settled law both in this State and elsewhere, so settled that no contrary authority has been cited, that the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner. *The basis*

*of the riparian doctrine, and an indispensable requisite to it, is actual contact of the land with the water.*" (Emphasis supplied.)

So, also, was the rule expressed in the case of *Richardson* v. *Prentiss,* 48 Mich 88, 89, 90:

"Under the conveyance to complainant of lot 5, she acquired no riparian rights whatever. This lot was conveyed according to a plat which reserved a strip of land between the lot and the waters of the bay, *and a strip 2 rods wide would as effectually cut off from lot 5 all riparian rights as would a much wider strip.*" (Emphasis supplied.)

Artificial water courses are waterways that owe their origin to acts of man, such as canals, drainage and irrigation ditches, aqueducts, flumes, and the like. 4 Restatement, Torts, § 841, subd h, p 321.

Land abutting on an artificial water course has no riparian rights. As is stated in the case of *Harrell* v. *F. H. Vahlsing, Inc.* (Texas), 248 SW2d 762, 769, 770:

"In *Kirk* v. *Hoge,* 123 Va 519, 532 (97 SE 116, 120), it was said that:

" 'The natural corporeal right in question is possessed by riparian owners of land on natural channels of water courses only. *Such right does not exist in the water flowing in an artificial channel.* The right of those owning land bordering upon or through which artificial channels pass, to the use of the water flowing therein, is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription. Angell on Water Courses (7th ed), § 90, p 91; 3 Farnham on Waters and Water Rights, § 820.

" 'There are some expressions in some of the authorities cited and relied on by appellees (40 Cyc, p 608[f]; 28 Am & Eng Ency Law [1st ed], p 982),

and in other authorities on the subject, to the effect
that rights may be acquired by landowners on arti-
ficial channels of water courses of which they can-
not be deprived; but upon close consideration of
such authorities it will be found that the rights which
can be so acquired must be by prescription, or by
grant, express or implied, and can be acquired in
no other way. We venture to say that no well-con-
sidered authority can be found which holds that such
rights are natural rights, such as are possessed by
a riparian landowner upon the natural course of a
flowing stream, or that they can be acquired other-
wise than as aforesaid.'

"Likewise, in *Fox River Flour & Paper Company
v. Kelley*, 70 Wis 287, 300 (35 NW 744, 749), the
supreme court of Wisconsin said:

" 'The courts hold that the right to the water of
a river flowing in a natural channel through a man's
land, and the right to water flowing to it through
an artificial water course constructed on his neigh-
bor's land, do not stand upon the same ground.
(Citing authorities.) In the former case, each ripar-
ian proprietor prima facie is entitled to the unim-
peded flow of the water in its natural channel, while
in the latter case any right to the flow must rest on
some grant or arrangement, either proven or pre-
sumed, from or with the owner of the land from
which the water is artificially brought, or on some
other legal origin.'

"Also, in *Drainage District No. 1 v. Suburban
Irrigation District*, 139 Neb 333, 343 (297 NW 645,
651), the supreme court of Nebraska said:

" 'Nor do the claims of riparian rights aid the
defendant and the interveners. We have held that
land, to be riparian, must have a stream flowing over
it or along its borders; and such proprietors have the
right to the ordinary or natural flow of such stream.
*Crawford Company v. Hathaway*, 67 Neb 325 (93
NW 781; 60 LRA 889, 108 Am St Rep 647).

" 'In the instant case, the drainage ditches here
involved are strictly artificial creations. Neither in

source nor channel do they partake of the elements
of a natural stream.

" ' "*There is a well defined distinction between
artificial streams and natural streams in artificial
channels. Thus, riparian rights do not ordinarily
attach to artificial streams in artificial channels.*"
27 RCL, p 1204. See *Sampson* v. *Hoddinott*, 1 CBNS
590, 26 LJ (Common Pleas) NS 148; *Fox River
Flour & Paper Company* v. *Kelley*, 70 Wis 287 (35
NW 744).'

"Other authorities supporting the rule stated in
the opinions above quoted from are: *Green* v.
*Carotta*, 72 Cal 267 (13 P 685); Annotations, 50
LRA 839; 67 Corpus Juris 903, Waters, § 333; 56
Am Jur 624, Waters, § 155; 2 Farnham, Waters and
Water Rights, p 1570; *Id,* Vol 3, p 2428; 1 Kinney
on Irrigation and Water Rights (2d ed) 803, § 473."
(Emphasis supplied.)

See, also, Gould on Waters (3d ed), § 225, p 444.

So, too, is the law in Michigan. See the case of
*Ruggles* v. *Dandison,* 284 Mich 338, where a small
lake of approximately 15 or 20 acres was situated
on the land of the defendants. On the line dividing
the plaintiffs' and defendants' property, the defend-
ants had erected a wire fence which cut off plaintiffs'
access to the lake. Plaintiffs filed a bill to enjoin
defendants from maintaining the fence on the theory
that the plaintiffs had riparian rights in the lake.
A witness for the defendants testified he had seen
two members of the plaintiffs' family making a
channel from their property into the lake so that
they could pull a boat up onto solid ground. Plain-
tiffs' tenant testified that at times during the year
the land between the lake and the fence was miry
and boggy. As to whether the plaintiffs' land pos-
sessed riparian rights, the Court said (pp 340, 341):

"Whether this lake can be said to extend to plain-
tiffs' property is a question of fact. *If the water*

*of the lake touches plaintiffs' property, because of
an artificial channel which was dug by plaintiffs
from their property, through the bog land to the
lake, they can acquire no riparian rights by virtue
of this fact;* and if water from the lake at times
flows around boggy places on plaintiffs' marsh land,
because of the fact that such soft marsh muck has
been trampled down by cattle pastured there during
many years, in the past, plaintiffs can claim no ripar-
ian rights, because of this situation, *as this would
not be the natural condition of the boggy land ad-
jacent to the lake."* (Emphasis supplied.)

We, therefore, conclude that parcels of land to
be subdivided from the main tract of land bordering
on Gun lake have no riparian rights as: (1) they
neither include therein a part of nor are they
bounded by Gun lake, and (2) the canal itself would
be an artificial water course giving rise to no ripar-
ian rights.

The remaining question for decision is whether
or not riparian rights may be conveyed to a grantee
or reserved by the grantor in a conveyance which
divides a tract of land with riparian rights into more
than one parcel, of which parcels only one would
remain bounded by the water course.

In the case of *Harvey Realty Co.* v. *Borough of
Wallingford, supra,* Justice Hinman, writing for
the Court, stated (111 Conn 352, 358, 359):

"It is clear that the grantees or contractees, from
the plaintiff, of lots separated from and not border-
ing on Pine lake can have, of their own right, no
riparian privileges in its waters. *And any attempted
transfer of the right made by a riparian to a non-
riparian proprietor is invalid."* (Citing text and
cases.) (Emphasis supplied.)

The Court of Appeals in its opinion and the de-
fendants in their brief rely heavily on certain cases

from Minnesota and California. As to the Minnesota case—*St. Anthony Falls Water-Power Company* v. *City of Minneapolis* (1889), 41 Minn 270, 273, 274 (43 NW 56, 57)—it is clear that riparian rights were not conveyed, but rather an easement of necessity arose. Justice Mitchell points this out in his opinion, stating:

"It is contended that, as the city owns no land abutting on the river, it is not a riparian owner, and hence has no riparian rights. This is a mere question of names or definitions, which is of *no legal significance whatever in the case.* \* \* \* The only question, therefore, is, what rights were in fact granted by this deed?" (Emphasis supplied.)

Justice Mitchell then proceeded to discuss easements of necessity in conveyances of certain property.

It is apparent from further reading of Minnesota cases that Minnesota does not follow the rule of transferability of riparian rights. In the case of *Johnson* v. *Seifert* (1960), 257 Minn 159, 165 (100 NW2d 689, 695), the Court was considering certain rights between riparian owners of a lake shore. The Court quoted from another Minnesota case—*Petraborg* v. *Zontelli,* 217 Minn 536, 547 (15 NW2d 174, 180):

" 'As to a public lake, a mutual right of enjoyment exists between and is shared by riparian owners and the public generally. Insofar as such recreational benefits as boating, hunting, and fishing therein, the riparian proprietor has no exclusive privileges. *Sanborn* v. *People's Ice Company,* 82 Minn 43, 50 (84 NW 641, 642, 51 LRA 829, 83 Am St Rep 401), where we said, however, with reference to the vested interests of the shore owners:

" ' "\* \* \* There are certain interests and rights vested in the shore owner which grow out of his

special connection with such waters as an owner. *These rights are common to all riparian owners on the same body of water, and they rest entirely upon the fact of title in the fee to the shore land."*

" 'To say that a shore owner does not have additional private rights and interests distinct from the public is to ignore completely those rights which attach by reason of his shore ownership.' (Italics supplied.)"

Note in these statements the emphasis on the vested interests of the shore owner and that these rights arise from shore ownership.

The California cases relied on are not decisive here. In two of the California cases cited in the Court of Appeals' opinion and in the defendants' brief, the Court recognized the "well-known scarcity of water" in that State. *Anaheim Union Water Company* v. *Fuller* (1907), 150 Cal 327, 335 (88 P 978, 982, 11 LRA NS 1062), and *Frazee* v. *Railroad Commission of California* (1921), 185 Cal 690, 698 (201 P 921, 924).* This "scarcity of water" has given rise to various rules of law that differ immensely from those in our State. For example, it is stated in 1A Thompson on Real Property (1964 ed), § 273, pp 435, 436:

"There have developed in the United States three theories as to public policy in water rights: (a) The common-law riparian doctrine of the eastern states; (b) The 'Colorado' doctrine of prior appropriation (Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, and Wyoming); and (c) The 'California' or dual doctrine of riparian rights and prior appropriation, modified as to each (California, Kansas, Nebraska, North Dakota, Oklahoma, Oregon, South Dakota, Texas, and Washington)."

---

* The other California cases are: *Strong* v. *Baldwin* (1908), 154 Cal 150 (97 P 178, 129 Am St Rep 149); *Miller & Lux, Inc.,* v. *J. G. James Company* (1919), 179 Cal 689 (178 P 716).

See, also, 6A American Law of Property, §§ 28.55, 28.58, pp 156, 170; 5 Powell on Real Property, § 733, p 439, *et seq.* Note, as to policy, et cetera, the California Constitution, art 14, § 3, and West's Annotated Codes of California, Water, §§ 100, 106. For an extensive discussion of California law on riparian rights, see *United States* v. *Fallbrook Public Utility District* (1958, SD Cal), 165 F Supp 806, 823, *et seq.*

Defendants direct attention to the statement of Justice FEAD in the case of *Bauman* v. *Barendregt,* 251 Mich 67, 69:

"It is a settled rule in this State that, *where there is no reservation of them,* riparian rights attach to lots bounded by natural water courses." (Citing cases.) (Emphasis supplied.)

We hold that what is meant by this "reservation" of riparian rights is merely the reservation of a right-of-way for access to the water course. In *Richardson* v. *Prentiss,* 48 Mich 88, upon which Justice FEAD relied in making this statement concerning reservation of rights, it is clear that the Court while speaking of the reservation meant a reservation, not of riparian rights, but rather of a right-of-way (p 91). This, however, cannot and does not give rise to riparian rights. *Schofield* v. *Dingman,* 261 Mich 611.

It is appropriate to reiterate the statement made by Chief Justice McGRATH, writing for the Court, in the case of *The Grand Rapids Ice & Coal Company* v. *The South Grand Rapids Ice & Coal Company,* 102 Mich 227, 236:

"The shore proprietor *takes by virtue of shore ownership.* His interest in the bed of the stream he acquires as appurtenant to the grant, and the extent of that interest depends upon his frontage, and the

form, length, and breadth of the body of water upon which he abuts." (Emphasis supplied.)

We hold that riparian rights are not alienable, severable, divisible, or assignable apart from the land which includes therein, or is bounded, by a natural water course.

While riparian rights may not be conveyed or reserved—nor do they exist by virtue of being bounded by an artificial water course—easements, licenses and the like for a right-of-way for access to a water course do exist and ofttimes are granted to nonriparian owners.

We will, therefore, treat the proposal here as though easements for rights-of-way for access are given to the back lot purchasers. We must then consider what right, if any, the owners of the back lots have to use these rights-of-way. In so doing, attention must be given to the use of riparian rights by the defendants and the remaining proprietors on Gun lake.

Riparian uses are divided generally into two classes. The first of these is for natural purposes. These uses encompass all those absolutely necessary for the existence of the riparian proprietor and his family, such as to quench thirst and for household purposes. Without these uses both man and beast would perish. Users for natural purposes enjoy a preferred nonproratable position with respect to all other users rather than a correlative one.

The second of these is a use for artificial purposes. Artificial uses are those which merely increase one's comfort and prosperity and do not rank as essential to his existence, such as commercial profit and recreation. Users for artificial purposes occupy a correlative status with the other riparians in exercise of their riparian rights for artificial purposes. Use for an artificial purpose must be (a) only for the

benefit of the riparian land and (b) reasonable in light of the correlative rights of the other proprietors. *Evans* v. *Merriweather,* 4 Ill (3 Scam) 492 (38 Am Dec 106). It is clear in the case before us that the use made of the property by the defendants is for a strictly artificial purpose and must meet the test of reasonableness.

In the case of *Hoover* v. *Crane,* 362 Mich 36, Justice EDWARDS stated (pp 40, 41):

"Michigan has adopted the reasonable-use rule in determining the conflicting rights of riparian owners to the use of lake water.

"In 1874, Justice COOLEY said:

" ' It is therefore not a diminution in the quantity of the water alone, or an alteration in its flow, or either or both of these circumstances combined with injury, that will give a right of action, if in view of all the circumstances, and having regard to equality of right in others, that which has been done and which causes the injury is not unreasonable. In other words, the injury that is incidental to a reasonable enjoyment of the common right can demand no redress.' *Dumont* v. *Kellogg,* 29 Mich 420, 425 (18 Am Rep 102).

"And in *People* v. *Hulbert,* 131 Mich 156 (64 LRA 265, 100 Am St Rep 588), the Court, quoting from *Gehlen Bros.* v. *Knorr,* 101 Iowa 700 (70 NW 757, 36 LRA 697, 63 Am St Rep 416), said (p 170):

" 'No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case. But in determining whether a use is reasonable we must consider what the use is for; its extent, duration, necessity, and its application; the nature and size of the stream, and the several uses to which it is put; the extent of the injury to the one proprietor, and of the benefit to the other; and all other facts which may bear upon the reasonableness of the use. *Red*

*River Roller Mills* v. *Wright,* 30 Minn 249 (15 NW 167, 44 Am Rep 194), and cases cited.'

"See, also, *Merkel* v. *Consumers Power Co.,* 220 Mich 128."

The trial court made no finding of fact as to the reasonableness of the use. This record is insufficient for us to make a determination as to reasonableness. Therefore, we remand to the trial court for such determination. The trial court should keep in mind the following factors in determining whether the use would be reasonable:

First, attention should be given to the water course and its attributes, including its size, character and natural state. In determining the reasonableness of the use in the case at bar, it should be considered that Gun lake is not a large lake, that it is used primarily for recreational purposes, and that the defendants are changing its natural state by expanding the lake frontage of their property from an actual 1,415 feet to a total, inclusive of the canals, of 12,415 feet, being an increase in frontage of approximately 800 per cent.

Second, the trial court should examine the use itself as to its type, extent, necessity, effect on the quantity, quality, and level of the water, and the purposes of the users. Factors in this particular case that should be considered include: (a) that this use would permanently add approximately one family without riparian rights to each 18 acres of surface area (or 137 families); (b) the possibility that the level of the lake may be reduced by withdrawing trust waters into over 2 miles of the proposed canals, as is alleged by the attorney general in his motion to intervene; (c) the possibility that pollution may result; (d) that there is nothing in the record showing any necessity for this use; and (e) the fact that

it appears that the purpose of the defendants herein is merely commercial exploitation.

Third, it is necessary to examine the proposed artificial use in relation to the consequential effects, including the benefits obtained and the detriment suffered, on the correlative rights and interests of other riparian proprietors and also on the interests of the State, including fishing, navigation, and conservation. An additional fact to be considered by the trial court in this litigation is whether the benefit to the defendant subdividers would amount merely to a rich financial harvest, while the remaining proprietors—who now possess a tranquil retreat from everyday living—would be forced to endure the annoyances which would come from an enormous increase in lake users.

Undoubtedly, at the new hearing, the attorney general of the State of Michigan will intervene under his statutory general powers of intervention for the purpose of protecting the rights of the public.

If, after considering all of these factors and any additional testimony the parties may desire to present, the trial court (as chancellor) concludes the use is unreasonable, that court should retain jurisdiction of the matter for the purpose of granting such further necessary or proper relief as may be necessary to protect the rights and interests of plaintiffs, the public, and riparian owners of property abutting this lake. Such further or proper relief shall be proposed only after reasonable notice and hearing, as is provided under GCR 1963, 521.6.

The judgment of the Court of Appeals is reversed and the case is remanded to the circuit court for a determination, pursuant to this opinion, of the reasonableness of the proposed use.

Plaintiffs shall have costs.

Black, Souris, and Adams, JJ., concurred with T. M. Kavanagh, J.

Kelly, J. (concurring in reversal). The sole purpose of this opinion is to set forth reasons why this case should not be remanded (as provided for in Justice Kavanagh's opinion) with a grant of right to the parties to introduce "any additional testimony the parties may desire to present."

A careful review of the record discloses that from the start to the finish plaintiffs and defendants have agreed that no factual question was in issue and the decision called for summary judgment.

Paragraph 8 of plaintiffs' amended complaint reads:

"That plaintiffs are informed and believe that the remainder of the lots proposed to be created by said defendants Edward R. Enz and Robert E. Boyle or by said defendant Sunrise Shores, Inc., will have approximately 11,000 feet of frontage on channels to be created but will have no frontage on Gun lake and that the ownership of said lots carries with it no riparian rights to said lake and no right to use the surface and waters of said lake for recreational purposes but that it is nevertheless the intention and plan of said defendants Edward R. Enz and Robert E. Boyle and of said defendant Sunrise Shores, Inc., to dispose of said lots to persons who will expect to secure along with ownership of such lots a right to use the surface of said lake equally with plaintiffs and other persons having riparian rights to said lake."

Defendants answer paragraph 8 by stating:

"In answer to paragraph (8) of said complaint, these defendants admit that the remaining lots in their proposed plat will have approximately 11,000 feet of frontage on channels now being created but

will have no frontage on Gun lake, but deny that the ownership of said lots carry [sic] with it no riparian rights and no right to use surface waters of said lake for recreational purposes, admit that it is the intention of these defendants to dispose of said lots to persons who will expect to secure, along with such ownership, the right of access to said lake and the right to use the surface of the same equally with the plaintiffs and all other persons having riparian rights to said lake, as well as with the general public."

Defendants' motion for summary judgment alleged that "there is no genuine issue as to any material fact," and in the supporting affidavit to the motion for summary judgment defendants Robert E. Boyle and Edward R. Enz stated:

"That, for and on behalf of said corporation, the deponents are causing said property to be developed and platted substantially as indicated in the drawing attached to said complaint, that they propose to provide all lots abutting on Gun lake with such riparian rights as will permit the use and enjoyment of the waters of Gun lake for recreational purposes with appropriate means of ingress and egress therefor,

"That in order to effect the foregoing purpose the deponents are causing a canal to be dug substantially as indicated in said drawing, that said canal will occupy a parcel of land having approximately 80 feet of frontage on Gun lake and they are informed and believe that the riparian rights appurtenant to said parcel extend to every part thereof, that it is their intention to dedicate said canal, the land it occupies, and the riparian rights appurtenant thereto to the common use and enjoyment of the owners of all lots not abutting on Gun lake, that they also intend to include with the conveyance of said lots, grants of appropriate riparian rights and easements so that the fee to each of said lots will carry with it not only such riparian rights as are necessary to per-

mit the use and enjoyment of the waters of Gun lake for recreational purposes but also a definite means of ingress and egress to said lake for said purposes."

Plaintiffs agreed with defendants that the pleadings brought before the court an issue which should be determined by summary judgment and filed their motion for summary judgment, alleging that to construct such a canal would be an invasion of the plaintiffs' rights.

In granting plaintiffs' motion for summary judgment, the trial court stated:

"To hold that the defendants may proceed with their project would be to say that they can change the entire character of the lake and it would seem that one of the obvious purposes of the owning of property on an inland lake is to enjoy the use thereof, regardless of whether or not used only for fishing, swimming, or bathing."

The only reason advanced for a remand is that: "The trial court made no finding of fact as to the reasonableness of the use."

The Court of Appeals found that the question of "reasonableness" was not before the court because the pleadings "did not frame that issue."

All parties asked this Court for a final determination on the record submitted, as disclosed by their requests under the heading "Relief":

"Appellants urge the Court to reverse the order of the Court of Appeals and to affirm the judgment for plaintiffs-appellants which was entered by the trial court."

"Appellees urge the Court to affirm the order of the Court of Appeals directing the trial court to enter summary judgment in favor of the defendants-appellees,"

The attorney general as *amicus curiae* requests "that the decision of the Court of Appeals be reversed and the decree of the Barry county circuit court be reinstated."

We disagree with Justice BRENNAN's affirmance of the Court of Appeals' decision that defendants can by proper conveyance grant riparian rights to the canal lot owners. But, we agree with Justice BRENNAN that:

"To remand this cause to circuit court for trial upon factual issues never alleged by the parties or framed by the pleadings is to impose upon both plaintiffs and defendants an entirely new lawsuit, and one which neither side has asked for."

For the reasons set forth in Justice KAVANAGH's opinion we reverse the Court of Appeals.

We affirm the judgment of the trial court.

Reversed, costs to plaintiffs-appellants.

DETHMERS, C. J., concurred with KELLY, J.

BRENNAN, J. *(dissenting).* The parties to this lawsuit have entered into a stipulation of facts which is as follows:

"This controversy concerns riparian property rights on Gun lake which is situated partly in Barry county, and partly in Allegan county, Michigan, and which the parties hereto agree has approximately 2,680 acres of surface area and approximately 30 miles of shoreline and is used primarily for recreational purposes.

"The defendant and appellant corporation is a contract purchaser of a riparian parcel of land having approximately 1,415 feet of frontage on said lake and the individual defendants and appellants are the sole stockholders of said corporation. The plaintiffs and appellees are owners of properties abutting on Gun

lake and possess riparian rights to said lake and use the waters thereof for recreational purposes. The State has intervened herein by the attorney general as *amicus curiae* and is the owner of a large parcel of land abutting Gun lake and possessing riparian rights thereto.

"The defendants and appellants are developing their parcel into a plat of from 144 to 153 lots of which approximately 16 will abut directly on Gun lake. The remaining lots would, if developed according to the appellants' plans, front on canals connected to the lake and the owners would have access to the lake for recreational purposes. These lots would have approximately 11,000 feet of frontage on these canals.

"Appellees' exhibit attached to their amended complaint substantially reflects the appellants' development. Appellants propose and intend to grant to the purchaser of each lot fronting on these canals the right and privilege of using the surface of Gun lake for recreational purposes in common with plaintiffs and the owners of all other lots abutting on said lake.

"When the appellees became aware that the appellants' development had commenced, they filed their complaint with the trial court, claiming that the appellants' proposed development would constitute an infringement upon the rights of appellees as riparian owners of Gun lake and seeking a declaratory judgment to the effect that the appellants' actions constituted an illegal invasion of appellees' rights. Both parties moved for summary judgment and the trial court on January 26, 1965, entered a judgment in favor of the appellees, from which judgment this appeal is taken."

. Based on this stipulation of facts, the Court of Appeals heard arguments in the cause and rendered its opinion on March 9, 1966, reversing the trial court and directing that judgment be entered for the defendants. *Thompson* v. *Enz*, 2 Mich App 404.

The attorney general of the State of Michigan has filed a brief *amicus curiae* in this cause in which it is stated, among other things, that the development proposed by the defendants would have an adverse effect on the level of the water in the lake. *Amicus curiae* must accept the issues framed by the actual parties to the lawsuit.

There has been no allegation here as to the effect of the development upon the level of the water in the lake nor any other specific adverse effect which might flow from defendants' development. Our decision in this case must be predicated upon the assumption that the development proposed by defendants will not lower the level of the water in the lake nor will it have any other specific deleterious effect thereon. The case is presented as one purely upon rights in land.

Plaintiffs have argued that a riparian proprietor owning property along the shore of an inland lake cannot legally extend riparian rights to back lot owners by means of an artificial canal. Defendants argue that riparian rights already enjoyed can be reserved and conveyed in connection with the sale of back lot parcels.

Plaintiffs correctly cite cases which stand for the undisputed proposition that lands, to have riparian rights, must abut upon the water (and that lands which do not have riparian rights cannot accede to them by reason of the creation of an artificial canal) Thus, if the defendant developer were to subdivide his property and convey lots which are not contiguous to the water with no reference in such conveyance to riparian rights, such lots would have no riparian character and could not thereafter be made riparian by the digging of a canal.

That is not the case here. Here, the developer wishes to subdivide his property and convey back

lots by deeds which will expressly grant easements for rights-of-way, permitting access to the lake through the canal. There is no doubt that a riparian owner can grant an easement over his land to permit a nonriparian owner to have access to the water.

A great many inland lakes in Michigan have been developed in this fashion, where cottages or homes do not have actual lake frontage, but do enjoy, in common with other property owners, the use of a granted or reserved easement providing for access to the water for recreational purposes. If the easement proposed in this case were a road, rather than a canal, no serious issue would be raised concerning the defendants' right to convey back lots with such an easement included in the grant.

But the easement here is not a road, it is a canal. And the difficulty here is that an easement over a canal, especially where the dominant estate abuts upon the canal, has many of the advantages and appearances of riparian ownership. Nevertheless, the two are not identical in legal contemplation. If the easement over the canal is limited to use of the canal for access to the lake, canal lot owners could not use the waters of the canal for household purposes, swimming, fishing, water skiing or any of those general purposes normally permitted to riparian owners. Once they get out on the lake, the canal lot owners would not be using the lake as riparian owners, but merely as members of the general public who have availed themselves of a lawful access to the lake.

It can be argued that the proprietor, by expressly permitting all of the usual incidents of riparian ownership, might create easements in the canal which are tantamount to riparian ownership therein.

Still there would remain the legal distinction between rights held by express grant in a deed and

rights held by virtue of the physical touching of the land by a natural body of water. And there would remain the distinction that the rights granted by easement would be rights in the canal and not in the lake.

It would seem that if the owner of riparian lands can lawfully dig a canal onto his own property, for his own use, he can grant easements in and to the canal to nonriparian property owners. The real issue in this case, then, is: Can this defendant lawfully dig this proposed canal on his property?

Absent statutory regulations to the contrary, mere alteration of the natural shoreline does not *per se* adversely affect the riparian rights of other owners of lake front property. Seawalls, boat wells, and permanent docks are all examples of alterations of the natural shoreline. No one contends that such improvements infringe upon the riparian rights of other owners in the absence of specific allegations of harm flowing therefrom, as for example, if a dock were to be of such length as to interfere with traffic upon the lake. Generally, riparian rights comprise such uses of the waters as do not deprive other riparian owners of the same uses.

Whether the dredging of any given canal by a riparian owner constitutes an infringement upon the riparian rights of the other riparian owners is a question of fact.

Will the lake level be lowered?

Will the lake be polluted?

Will the fish die, or the birds fly away, or the lake bottom become rocky or mucky or weedy?

In short, these riparian plaintiffs have the burden of alleging and proving some actual damage to themselves that will flow from the dredging of the canal.

Such factual questions could have been raised in this case, but they were not.

To remand this cause to circuit court for trial upon factual issues never alleged by the parties or framed by the pleadings is to impose upon both plaintiffs and defendants an entirely new lawsuit, and one which neither side has asked for.

A simple and final appellate decision in this case upon the legal questions raised in this case and to which the parties have limited themselves will leave other plaintiffs, including the State of Michigan, quite free to begin a different lawsuit upon a different theory if they choose to do so.

There is one other point which ought to be discussed here. Plaintiffs claim that the creation of canal lots would *per se* have an injurious effect upon other property owners in that the boat traffic upon the lake would be increased. It is further assumed, if not argued, that if all of the other property owners were to build canals and subdivide canal lots, there would be an impossible burden of traffic upon the lake. The argument must be conceded. If every other property owner on Gun lake were to develop his land in the fashion proposed by these defendants, we roughly compute a resulting boat population upon Gun lake of approximately 17,000. But this danger of overcrowding must be considered in the light of the fact that the State of Michigan maintains a public park on the shores of Gun lake, and that all of the people of Michigan enjoy the common right to use the waters of our lakes for recreational purposes, whenever lawful access to such lakes is available.

The danger of overcrowding must also be considered in the light of the fact that no statute or ordinance would prevent defendants here from establishing a public boat drop or marina on their property, just as no law limits the number of boats which may be launched by the other riparian owners.

The cottage owners on Gun lake, in common with those on all the other inland lakes of Michigan, face

an explosion in motorboating. With the increase in the numbers of small craft in Michigan, whether launched from trailers, stored in marinas or harbored in canals, will come a host of serious problems, both for the cottage owners and for the members of the public who seek to avail themselves of our recreational waters. The same deluge of motor oil, fumes, and trash which so sorely besets our highways is already appearing on our lakes and rivers.

That the inviting waters of our beautiful peninsula might become polluted in the next generation certainly gives us pause. *But the problem cannot be solved by declaring here a rule of law that would vest in lake front property owners the right to limit the number of persons who can enjoy this water wonderland.*

Michigan needs wise and forethinking legislation, which will protect our lakes from overcrowding, and the pollution which flows from immoderate use, so that all of the people of the State, including riparian cottage owners, will be able to enjoy our great natural bounty for centuries to come.

In summary then, a riparian owner can alter the natural shoreline of an inland lake by digging a canal, provided that in doing so he does not adversely affect the rights of other riparian owners to the use and enjoyment of the lake. Whether the digging of a canal will have such adverse effect in any given case is a question of fact. Where a riparian owner digs a canal onto his own property without adversely affecting the use and enjoyment of the lake by other riparian owners, he may convey canal lots and grant easements over the canal permitting access to the lake, by canal lot owners. And finally, the mere fact of the increased use of the lake resulting from such a development and the deleterious effects flowing naturally from such in-

creased use, do not, standing alone, constitute an unreasonable infringement upon the riparian rights of other riparian owners.

The judgment of the Court of Appeals should be affirmed, with costs to appellees.

O'Hara, J., concurred with Brennan, J.